**Kosta P. VELIS, Debtor–Appellant,**

v.

**Mary KARDANIS, Creditor–Appellee.**

No. 91–5084.

United States Court of Appeals, Third Circuit.

Argued June 11, 1991.

Decided Nov. 14, 1991.

Rehearing Denied Dec. 26, 1991.

Robert A. White (argued), Bruce W. Clark, Dechert, Price & Rhoads, Princeton, N.J. for debtor-appellant.

Allen I. Gorski (argued), Teich, Groh & Frost, Trenton, N.J. for creditor-appellee.

Before NYGAARD AND ALITO, Circuit Judges, and FULLAM, Senior District Judge *

* Honorable John P. Fullam, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

OPINION OF THE COURT

FULLAM, Senior District Judge.

This appeal presents important issues, of first impression in this court, concerning the status of qualified pension plans, Keogh plans, and IRA accounts in bankruptcy.

Section 541(a)(1) of the Bankruptcy Code, 11 U.S.C. § 541(a)(1), in very broad language, provides that the estate of the debtor includes "all legal or equitable interests of the debtor in property as of the commencement of the case." But § 541(c)(2) of the Bankruptcy Code excludes property from the estate to the extent that

> "a restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title."

The parties disagree, and the reported decisions are in disarray, as to whether "applicable nonbankruptcy law" in this context was intended by Congress to be limited to state spendthrift trust law, or whether it embraces federal law as well.

### I.

The debtor, Constantine P. Velis, is an orthopedic surgeon employed by a professional corporation, Dr. Constantine P. Velis, P.C. (hereinafter, "PC"). He is the 100–percent owner of the stock in the PC and is the only physician employed by the PC. The PC also employs the debtor's wife as an office manager.

In January 1980, the PC established a pension plan for the benefit of the debtor, his wife and two other employees. In addition, the PC created a Keogh plan and an IRA in the name of the debtor, as well as a separate IRA in the name of the debtor's wife. It is undisputed that the pension plan, the Keogh plan and the IRA are qualified plans, containing language prohibiting the assignment or alienation of benefits as required by § 401(a)(13) of the

Internal Revenue Code, 26 U.S.C. § 401(a)(13), and § 206(d)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1056(d)(1).

On December 18, 1986, the debtor filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. At that time, his interest in the pension plan was valued at $184,000, his interest in the Keogh plan was valued at $162,478, and his IRA was valued at $9,100; thus, his total interest in the three plans amounted to $355,578.

The bankruptcy petition was triggered by the following events: In August 1986, the debtor and his wife entered into an agreement to purchase the two cooperative apartments in which the medical practice was located, for a total price of $775,000. They made a down payment of $77,500, using funds derived from the sale of some jointly owned real estate. They obtained a commitment from a bank to finance $620,000 of the balance. In October 1986, however, the appellee, Mary Kardanis, recovered a $3.7 million medical malpractice judgment against the debtor (later reduced to $2.1 million). Debtor had only $1 million in malpractice insurance coverage. The bank canceled its mortgage commitment. The debtor negotiated an extension of the agreement of sale, conditioned upon his making a further payment of $222,500 on or before December 31, 1986. The debtor "borrowed" that sum (and, later, additional sums needed to complete the settlement) from his and his wife's various interests in the pension plan, IRAs and the Keogh plan. In all, the couple raised $700,433 from these sources, including $355,578 from debtor's interests in these plans.

It was not until October 5, 1987 that these arrangements were approved by the bankruptcy court, in an order which retroactively authorized the "borrowing" from the pension plans and the creation of corresponding liens against the cooperative apartments.

In the bankruptcy court the debtor took the position that his interests in these pension plans were excluded from the estate, pursuant to § 541(c)(2); alternatively, he claimed exemption to the maximum extent allowed by 11 U.S.C. § 522(d)(10)(E), which permits exemptions of

> "[T]he debtor's right to receive ... a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor...."

The bankruptcy judge rejected both contentions, and the district court affirmed.[1] 123 B.R. 497.

## II.

As noted in the opinion of the district court, four of the five circuit courts of appeals which have considered the issue have narrowly construed the term "applicable nonbankruptcy law" as used in § 541(c)(2) to encompass only state spendthrift trust law. See In re Lucas, 924 F.2d 597 (6th Cir.1991); Daniel v. Security Pacific Nat'l Bank (In re Daniel), 771 F.2d 1352, 1360 (9th Cir.), cert. denied, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986); Lichstrahl v. Bankers Trust (In re Lichstrahl), 750 F.2d 1488, 1490 (11th Cir. 1985); Samore v. Graham (In re Graham), 726 F.2d 1268, 1273 (8th Cir.1984); Goff v. Taylor (In re Goff), 706 F.2d 574, 580 (5th Cir.1983); contra Anderson v. Raine (In re Moore), 907 F.2d 1476, 1477 (4th Cir.1990). The bankruptcy courts in this circuit are also split, with a majority favoring the narrow view. See In re Atallah, 95 B.R. 910, 915 (Bankr.E.D.Pa.1989); In re Hysick, 90 B.R. 770, 773 (Bankr. E.D.Pa.1988); In re Heisey, 88 B.R. 47, 51 (Bankr.D.N.J.1988); White v. Babo (In re Babo), 81 B.R. 389, 391 (Bankr.W.D.Pa. 1988); B.K. Medical Systems, Inc. Pension Plan v. Roberts (In re Roberts), 81 B.R. 354, 374 (Bankr.W.D.Pa.1987); but see

---

1. Since the issue was not raised in the district court, or on appeal, we do not consider a possible procedural defect concerning the timeliness of appellee's objections to the claimed exemption. See Robert Taylor v. Freeland and Kronz, 938 F.2d 420 (3d Cir.1991). Moreover, the issue of includability under § 541(c)(2) would not be affected by any such procedural defect.

8

*Bentz v. Sawdy (In re Sawdy),* 49 B.R. 383, 386 (Bankr.W.D.Pa.1985); *Liscinski v. Mosley (In re Mosley),* 42 B.R. 181, 191 (Bankr.D.N.J.1984).

The decisions favoring the narrow, state-spendthrift trust-law-only, interpretation purport to find support for that view in the legislative history of the Bankruptcy Code, and in public policy: it is argued that, otherwise, persons could place assets beyond the reach of their creditors by setting up revocable trusts for their own benefit. Courts favoring the minority view point to the plain language of the statute, the absence of clear legislative history to the contrary, and the presumed desire of Congress to safeguard pension entitlements. In the present case, in addition to considering these competing arguments, both the bankruptcy court and the district court expressed the view that, if all qualified pension plan assets were excluded from the debtor's estate under § 541(c)(2), there would be no need for the exemption provisions of § 522(d)(10)(E).

### III.

It is axiomatic that statutory interpretation properly begins with the language of the statute itself, including all of its parts. There is no need to resort to legislative history unless the statutory language is ambiguous. In our view, the term "enforceable under applicable nonbankruptcy law" is not in the least ambiguous, and cannot reasonably be interpreted as "enforceable under applicable state spendthrift-trust law." The term "nonbankruptcy law" is, on its face, not limited to state law.

Moreover, any conceivable doubt as to the meaning of the term "applicable nonbankruptcy law" in § 541(c)(2) is removed when one considers how the same term is used elsewhere in the Bankruptcy Code. "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—[either] because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a sub-

stantive effect that is compatible with the rest of the law." *United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

Throughout the Bankruptcy Code, Congress made clear its ability to specify either state or federal law when such limitation was intended. For example, 11 U.S.C. § 109(c)(2) limits Chapter 9 filings to entities authorized to be such debtors under "[s]tate law;" 11 U.S.C. § 522(b)(1) sets forth a debtor's exemptions under "[s]tate law that is applicable;" 11 U.S.C. § 522(b)(2) sets forth a debtor's exemptions under "[s]tate or local law that is applicable;" and 11 U.S.C. § 523(a)(5) denies discharge of a debt for support pursuant to an order made "in accordance with [s]tate or territorial law".

More important, the term "applicable nonbankruptcy law" in other sections of the Bankruptcy Code plainly does not exclude federal law. For example, 11 U.S.C. § 1125(d) uses the phrase "applicable nonbankruptcy law" to exempt postpetition disclosure and solicitation statements from the requirements of, *inter alia,* federal securities laws. Sections 108(a), (b) and (c). 11 U.S.C. § 108, use the phrase to toll the statute of limitations for both federal and state law claims. 11 U.S.C. § 365(n)(1)(B) uses the same phrase in outlining the protection afforded intellectual property under, *inter alia,* federal copyright laws.

The argument that if "applicable nonbankruptcy law" in § 541(c)(2) includes both state and federal law, the exemption provisions of § 522(d)(10)(E) would be superfluous or meaningless overlooks the distinctions between the two sections. Section 522 deals with *distributions* made from a pension plan and distributions which the debtor has a present and immediate right to receive. *Clark v. O'Neill (In re Clark),* 711 F.2d 21 (3d Cir.1983). Even if pension plan assets in the hands of a trustee are beyond the reach of creditors because not a part of the debtor's estate under § 541(c)(2), distributions made from the plan to the debtor would not enjoy such

protection, in the absence of exemption under § 522(d)(10)(E).

■ Thus, to the extent that the bankruptcy court and district court in this case ruled that the term "applicable nonbankruptcy law" in § 541(c)(2) is limited to state spendthrift trust law, we disagree. We find persuasive the reasoning of the Fourth Circuit Court of Appeals in *Anderson v. Raine (In re Moore)*, 907 F.2d 1476 (4th Cir.1990). Moreover, we are persuaded that, although the legislative history undoubtedly bolsters the conclusion that Congress intended to preserve the protections afforded by state spendthrift trust laws, the legislative history plainly does not establish that that was the only purpose intended to be accomplished by § 541(c)(2), as the opinion in the *Moore* case explains.

It is argued that Congress cannot have intended to enable persons to place their assets beyond the reach of creditors by placing them in a trust for their own benefit, except to the limited extent that the laws of the various states would uphold the spendthrift provisions. Under the law of New Jersey, for example, "self-settled" trusts cannot qualify as spendthrift trusts. *See, e.g., Aronsohn and Springstead v. Weissman*, 230 N.J.Super. 63, 552 A.2d 649 (Appellate Div.1989). But there can be no doubt that Congress has expressed a deep and continuing interest in the preservation of pension plans, and in encouraging retirement savings, as reflected in the statutes which have given us ERISA, Keogh plans and IRAs. We believe it reasonable to conclude that Congress intended to provide protection against the claims of creditors for a person's interest in pension plans, unless vulnerable to challenge as fraudulent conveyances or voidable preferences. Presumably, substantial or unusual contributions to a self-settled pension trust made within the preference period, or with intent to defraud creditors, should receive no protection under either § 541(c)(2) or § 522(d)(10)(E). In this case, however, no such challenge has been asserted.

## IV.

Although we disagree with the restrictive interpretation given by the bankruptcy and district courts to the term "applicable nonbankruptcy law" and conclude that federal, as well as state law, may be the source of restrictions which must be recognized in bankruptcy under § 541(c)(2), that does not end our inquiry. The critical issue is what restrictions are *enforceable* in the context of this case.

■ The IRA account poses no great difficulty. Such accounts are not required to have anti-alienation/assignment provisions under ERISA, 29 U.S.C. § 1051(6). And, since the debtor was 63 years of age when the bankruptcy petition was filed, he could withdraw funds from his IRA without penalty, at any time. As to that account, it would seem there were no enforceable restrictions, under any "nonbankruptcy law" or otherwise. The IRA was thus a part of the debtor's estate under § 541(c)(1), not excluded under 541(c)(2) and, as a present entitlement, susceptible to possible exemption under § 522(d)(10)(E). The exemption issue will be discussed below.

■ With respect to the pension plan and the Keogh plan, we conclude that, to the extent the assets in these plans have already been distributed to or for the benefit of the debtor, the debtor no longer has available the protections which might otherwise have been accorded under the ERISA statute. Section 541(c)(2) requires recognition of restrictions upon transfer which are enforceable by law; it does not operate to require non-recognition of transfers which have already occurred, nor does it apply to assets in the possession of the debtor without restrictions. Here, it is undisputed that, shortly after the bankruptcy petition was filed, the debtor withdrew substantially all of the funds in his pension plan, Keogh plan and IRA, and used the money to purchase the cooperative apartments—not as pension plan assets, or as part of the debtor's estate, but for his own purposes. To that extent, there can be no doubt that these monies came into the unrestricted possession of the debtor, and were no longer pension assets. The fact

that, months later, the bankruptcy court retroactively authorized the debtor to "borrow" this money and to provide liens against the real estate purchased, cannot be regarded as establishing that no distribution occurred. The court's order was stated to be without prejudice to the contentions of the parties in this litigation; in effect, the order merely preserved the status quo, pending resolution of this dispute.

Both the bankruptcy court and the district court relied heavily upon these "borrowings" as demonstrating that this was really a self-settled revocable trust arrangement, not entitled to spendthrift trust protection under New Jersey law. They concluded that all of the assets of the pension plan, Keogh plan and IRA, including future contributions and accretions, were part of the debtor's estate and available to creditors. For the reasons discussed above, we agree that, to the extent distributions were made to or for the benefit of the debtor, those assets (or, in the context of this case, their equivalent value in liens against the real estate) are part of the debtor's estate. But, as to any undistributed assets in the pension plan and Keogh plan, these assets may be excluded under § 541(c)(2) unless there is some other basis for challenge than is disclosed in this record.[2]

### V.

Appellant does not seriously challenge in this court the findings and conclusions of the bankruptcy court and the district court, which denied exemption under § 522(d)(10)(E). Apart from all other considerations, that section permits exemption only "to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." The factual findings that the debtor had not shown the requisite need are, to say the least, not clearly erroneous.

### VI.

To summarize, we have concluded that the restrictions which must be recognized

in bankruptcy under § 541(c)(2) are not limited to state spendthrift-trust law, but include restrictions enforceable under either state or federal law. We conclude further, however, that to the extent of distributions made from the pension plans to the debtor or for his benefit, there are no enforceable restrictions which preclude treating those distributions as part of the estate of the debtor. To the extent that the order of the district court denied the debtor's claim of exemption under § 522(d)(10)(E), the order of the district court will be affirmed. To the extent that the district court order held that pension plan assets (including postpetition contributions and accretions) are not excludable from the debtor's estate pursuant to § 541(c)(2), the order is reversed and the matter remanded for further proceedings not inconsistent with the views expressed above.

---

**2.** The opinion of the district court reflects that additional contributions may have been, and

may continue to be, made to the pension plan.