972 F.2d 351
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
In the Matter of Sharon R. CRESS, Debtor.
Appeal of EMPLOYEE BENEFITS COMMITTEE and Trustees of the
Lilly Employee Savings Plan.
 No. 91-2355.
 United States Court of Appeals, Seventh Circuit.
 Argued May 26, 1992.
Decided July 31, 1992.
 
 Before BAUER, Chief Judge, COFFEY, Circuit Judge, and WOOD, JR., Senior Circuit Judge.
 
 ORDER
 
 1
 The Employee Benefits Committee and Trustees of the Lilly Employee Savings Plan appeal the district court's affirmance of the bankruptcy judge's holding that a portion of Sharon Cress' (the debtor's) pension fund was part of the bankruptcy estate and must be turned over to the bankruptcy trustee. Subsequent to the filing of this appeal, in order to facilitate the discharge of her debts, Cress entered into an agreement with the bankruptcy trustee that she would request that the pension fund trustees disburse to her the portion of the pension fund that was available for withdrawal and turn the funds over to the bankruptcy trustee. Since this agreement between the debtor and the bankruptcy trustee obviates the pension plan fiduciaries' need to comply with the order of the district court, we dismiss this appeal as moot and vacate the opinions of the district court and bankruptcy court.
 
 I. FACTS
 
 2
 Sharon Cress filed a voluntary petition for protection under Chapter 7 of the Bankruptcy Code on September 19, 1989. The trustee appointed to administer her bankruptcy estate determined that the only asset of any significant value to the estate was Cress' "[v]ested interest in funds on deposit and earnings in Eli Lilly & Company Employee Savings Plan ($5,867.55)." The bankruptcy trustee informed the court that he had "determined that the aforementioned assets represent the only claim that he might have against the Debtor(s) by reason of any claim for liquidation of property, and that the remaining property of the estate is encumbered, exempt, or burdensome to, or of inconsequential value to the estate...." The Employee Savings Plan was a pension plan within the meaning of the Employee Retirement and Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. At the time of the filing of her Chapter 7 petition, the debtor had $8,218.88 in her ERISA account. Although the pension plan contained an anti-alienation provision pursuant to 29 U.S.C. § 1056(d)(1) ("each pension plan shall provide that benefits provided under the plan may not be assigned or alienated"),[1] the debtor had access to the funds as follows: the debtor could withdraw $3,129.69 at will through the submission of written directions to the Employee's Benefits Committee to disburse the funds to her; $2,737.86 were available for a "hardship withdrawal" in the event of certain financial needs such as medical expenditures, purchase of a principal residence, payment of tuition for post-secondary education, the avoidance of eviction from the plan participant's principal residence, or the payment of funeral expenses; and $2,351.33 of the fund was subject to withdrawal only upon retirement, death, disability or termination of employment.
 
 
 3
 The bankruptcy trustee requested that the plan fiduciaries turn over the $3,129.69 available for voluntary withdrawal and the $2,737.86 subject to a hardship withdrawal, but abandoned any interest in the $2,351.33 that was available only upon retirement, death, disability or termination of employment. The plan fiduciaries refused the trustee's request on the ground that the turning over of the funds would be a violation of the anti-alienation provision of the plan and might subject them to liability for a breach of their fiduciary duty pursuant to 29 U.S.C. § 1109(a). Upon the plan fiduciaries' refusal to turn over the funds, the bankruptcy trustee initiated an adversary proceeding to compel the turnover. The trustee asserted that despite the non-alienation provision of the pension plan, the funds were property of the estate pursuant to 11 U.S.C. § 541(a)(1).[2] The plan fiduciaries objected to the inclusion of the debtor's funds in the bankruptcy estate on the ground that the ERISA plan was exempt from the estate pursuant to § 541(c)(2), which states: "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." The fiduciaries argued that ERISA qualifies as "applicable nonbankruptcy law" and thus, the debtor's ERISA fund could not be made part of the bankruptcy estate. The bankruptcy judge disagreed and ordered the plan fiduciaries to turn over the funds to the bankruptcy trustee; the district court affirmed.
 
 
 4
 Subsequent to the district court's May 9, 1991 affirmance of the bankruptcy judge's ruling, the debtor agreed to voluntarily withdraw the $3,129.69 readily available to her, request a hardship withdrawal of the $2,737.86, and turn the funds over to the trustee. The bankruptcy trustee agreed to waive and abandon any claim for funds the fiduciaries refused to disburse to the debtor, and thereafter the bankruptcy court approved and confirmed the abandonment. On July 22, 1991, the bankruptcy trustee filed a motion to dismiss the appeal as moot, and the plan fiduciaries objected, arguing that even though they no longer had a legally cognizable interest in the outcome of the litigation, dismissal for mootness would injure them because the case is "capable of repetition yet evading review." In the alternative, the plan fiduciaries argued that if we dismissed the case as moot, we should vacate the judgments of the bankruptcy court and the district court. On November 15, 1991, we ordered that the mootness issues be addressed by the merits panel.
 
 II. ISSUES
 
 5
 In view of the debtor's agreement to voluntarily turn the pension funds available to her over to the bankruptcy trustee, we shall consider only two issues: 1) whether the case is moot; and 2) whether the judgments of the district court and the bankruptcy court should be vacated.
 
 III. MOOTNESS
 
 6
 The bankruptcy trustee argues that since the debtor has agreed to turn over the available funds to him, "the Fiduciaries have no legally cognizable interest in the outcome of the litigation, [so] no meaningful relief can be granted, and a decision by the Court of Appeals is unnecessary."
 
 
 7
 "Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies. To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision .... Article III denies federal courts the power 'to decide questions that cannot affect the rights of litigants in the case before them,' and confines them to resolving 'real and substantial controvers[ies] admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' This case-or-controversy requirement subsists through all states of federal judicial proceedings, trial and appellate."
 
 
 8
 Lewis v. Continental Bank Corp., 110 S.Ct. 1249, 1253 (1990) (citations omitted) (emphasis added). As the debtor's agreement with the bankruptcy trustee has removed the fiduciaries' necessity of complying with the order to turn over the funds to the trustee, the fiduciaries are without "an actual injury traceable to the defendant [that could] be redressed by a favorable judicial decision."
 
 
 9
 Nevertheless, the fiduciaries assert that this appeal falls within the exception to the case-or-controversy requirement where an injury or dispute is "capable of repetition, yet evading review." The Supreme Court has allowed such cases to
 
 
 10
 "go forward despite abatement of the underlying injury only in the 'exceptional situations' where the following two circumstances were simultaneously present: '(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.' "
 
 
 11
 Lewis, 110 S.Ct. at 1255 (citations omitted). The fiduciaries may well meet the second condition, for the retirement plan they administer includes some 12,500 participants. But the Trustees fail to meet the first requirement of the exception to the case-or-controversy requisite, that the duration of the challenged action be too short to be litigated prior to its expiration. The plan fiduciaries' argument that "the pressures of a delayed bankruptcy discharge, as well as the small dollar amounts often involved in these cases, influence individual bankrupts and trustees to compromise as to pension assets before the issue can be fully litigated" is unpersuasive because a number of cases dealing with the issue of whether ERISA accounts become part of the bankruptcy estate have recently progressed through the appellate process without becoming moot. See e.g., In re Moore, 907 F.2d 1476, 1477 (4th Cir.1990); In re Lucas, 924 F.2d 597, 601 (6th Cir.1991); In re Velis, 949 F.2d 78, 81 (3d Cir.1991); In re Harline, 950 F.2d 669, 674 (10th Cir.1991). Interestingly, the United States Supreme Court decided the very issue the fiduciaries are attempting to raise before us less than three weeks after oral argument in this case. See Patterson v. Shumate, 60 U.S.L.W. 4550, 4551 (U.S. June 15, 1992, affirming 943 F.2d 362 (4th Cir.1991). Given the number of cases dealing with the issue of whether ERISA plans are included in the bankruptcy estate that have made their way through the appellate courts in the past several years, we hold that the fiduciaries' claim is not capable of repetition yet evading review.
 
 IV. VACATUR
 
 12
 The plan fiduciaries have suggested that if we dismiss their appeal as moot, we should vacate the decisions of the district court and bankruptcy court. As the Supreme Court has noted, the "ordinary practice in disposing of a case that has become moot on appeal is to vacate the judgment with directions to dismiss." Lewis, 110 S.Ct. at 1256. We have previously noted that the purpose of vacatur is "to relieve the parties of collateral consequences when they were unable to obtain appellate review." In re Memorial Hospital, 862 F.2d 1299, 1301 (7th Cir.1988). The case in controversy presents a somewhat unique situation, for the Supreme Court's decision in Patterson, published shortly after we heard oral argument in this case, held that ERISA plans do not become part of the bankruptcy estate even when the plan beneficiary can potentially control the disbursement of the entire amount of the retirement fund. See Patterson, 60 U.S.L.W. at 4551; Shumate v. Patterson, 943 F.2d 362, 364 n. 3 (4th Cir.1991). In view of this holding, we would be bound to reverse the judgments of the district court and bankruptcy court if the merits of this appeal were before us, and thus, those judgments are unlikely to have a future prejudicial effect on the fiduciaries. Nonetheless, since the ordinary practice is to vacate the judgment with directions to dismiss when an appeal becomes moot, and we know of no reason, nor has any been presented to us, why we should allow the judgments to stand, we vacate the judgments of the district court and bankruptcy court.
 
 V. CONCLUSION
 
 13
 The appeal is dismissed as moot and the judgments of the district court and the bankruptcy court are vacated with directions to dismiss.
 
 
 
 [1]
 The anti-alienation provision states in pertinent part:
 "Spendthrift provision.
 "The funds held pursuant to any Trust shall not be liable in any way, whether by process of law or otherwise, for the debts or other obligations of any Employee, retired Employee, or other person. Benefits payable under this Plan shall not be subject, in any manner, to anticipation, alienation, sale, transfer, or assignment by the Employee, and any attempt to do so shall be void."
 
 
 [2]
 Section 541(a)(1) states in part: "Such estate is comprised of all the following property, wherever located and by whomever held: (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor and property as of the commencement of the case...."