In re Clyde Lawayne LATTA, Debtor.

Howard W. JONES, Trustee in
Bankruptcy, Appellant,

v.

Clyde Lawayne LATTA and Lockheed Basic Benefit Plan for Hourly Employees, and Lockheed Hourly Employee Savings Plan Plus, Appellees.

Civ.A. No. 4:94–cv–228–HLM.

United States District Court,
N.D. Georgia,
Rome Division.

March 27, 1995.

---

Howard W. Jones, Chapter 7 Trustee, Jones & Ledbetter, Calhoun, GA.

Albert Floyd Burkhalter, Jr., Burkhalter & Stephens, Rome, GA, for Clyde Lawayne Latta.

Alfred S. Lurey, Carolyn A. Peterson, Kilpatrick & Cody, Atlanta, GA, for Lockheed Basic Benefit Plan for Hourly Employees, Lockheed Hourly Employee Savings Plan Plus.

---

## ORDER

HAROLD L. MURPHY, District Judge.

This case is before the Court on Trustee Howard Jones's appeal of the Bankruptcy Court's August 23, 1994 Order. Jurisdiction is proper pursuant to 28 U.S.C § 158(a).

## I. BACKGROUND

Clyde Lawayne Latta ("the Debtor") filed a bankruptcy petition seeking a Chapter 7 discharge. Howard Jones was appointed trustee of the bankruptcy estate. This appeal stems from the Bankruptcy Court's Order in an adversary proceeding between Trustee Jones and Defendant Lockheed Aeronautical Systems Company ("Defendant Lockheed"). The Trustee sought to enjoin Defendant Lockheed from disbursing to the Debtor any benefits under its savings and benefit plans. He also sought to deny the Debtor a discharge because the Debtor had represented that his interest in the aforesaid benefit programs is not property of the bankruptcy estate. The Bankruptcy Court determined that these benefits are not property of the estate and, accordingly, the Debtor should not be denied a discharge.

The Trustee appeals this decision. He does not contest the facts upon which the Bankruptcy Court based its Order, but instead disputes the court's legal conclusions. The parties stipulated to most of the facts of this case. They are reproduced below, in an abbreviated form, for background purposes.

Prior to January 8, 1993, Debtor Latta was an hourly employee of Defendant Lockheed. The Debtor participated in the Lockheed Hourly Employee Savings Plan Plus ("the Savings Plan"). The Savings Plan consists of two portions. The first portion is a profit sharing plan under § 401(a) of the Internal Revenue Code. The second portion includes both a stock bonus plan and an employee stock ownership plan under § 401(a) and 4975(e)(7) of the Internal Revenue Code. Employee contributions to the Saving Plan were made by payroll deductions. Defendant Lockheed's matching contributions were made in the form of stock.

As an hourly employee, the Debtor was also automatically a participant in the Lockheed Basic Benefit Plan for Hourly Employees ("the Benefit Plan"). The Benefit Plan does not require employees to make contributions. Contributions were made solely by Defendant Lockheed.

Both the Savings Plan and the Benefit Plan impose restrictions on the transfer of a participant's beneficial interest in the Plan. They each provide, in relevant part, that:

[n]o right or benefit provided for in this plan shall be subject in any manner to anticipation, commutation, alienation, sale, transfer, assignment, pledge, encumbrance or charge, and any attempt to anticipate, commute, alienate, sell, transfer, assign, pledge, encumber or charge the same shall be void. No such right or benefit shall be in any manner liable for or subject to the debts, contracts, liabilities or engagements of any person entitled to such right or benefit. No such right or benefit shall be subject to garnishment, attachment, execution, levy or any other similar adverse

legal process, or to bankruptcy or insolvency proceedings of any kind.

The terms of the Savings Plan and the Benefit Plan prohibit the Plan Trustee from making a payment to anyone other than Plan participants. Both the Savings Plan and the Benefit Plan comply with the anti-alienation restrictions set forth in § 206(d)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA") which states that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." As such, both the Savings Plan and the Benefit Plan qualify as ERISA plans.

The Savings Plan and the Benefit Plan also constitute qualified trusts under § 401(a) of the Internal Revenue Code, which states in relevant part that "[a] trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated." The Plans must constitute qualified trusts in order to receive tax-exempt status.

Both the Benefit Plan and the Savings Plan provide for the distribution of a participant's entire benefit under the Plans only upon the occurrence of certain events, such as retirement, disability, lay off from employment for four consecutive weeks, or death. Prior to any termination of employment, no withdrawal of a benefit is permitted under the Benefit Plan. The Savings Plan, however, provides for in-service withdrawal of benefits.

On January 8, 1993, the Debtor was laid off from his position at Defendant Lockheed. After the Debtor had been laid off for four consecutive weeks, he was entitled under the Savings Plan and the Benefit Plan to make one of three elections: (a) to obtain a direct distribution of his account balance in the Savings Plan and the Benefit Plan; (b) to rollover his interest in the Savings Plan and the Benefit Plan to an Individual Retirement Account; or (c) to defer his benefits until he is sixty-five years of age.

On March 3, 1993, the Debtor filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code. As of the petition date, the Debtor's vested interest in the Saving Plan was approximately $12,500, of which

$8,300 was available for distribution. The Debtor's interest in the Benefit Plan was approximately $300.

In April, 1993, the Debtor executed an Application for Benefits–Election to Receive Distribution, on which he indicted that a distribution of his account balance should be made directly to him. On May 21, 1993, the Bankruptcy Trustee filed a complaint seeking an order declaring that the Trustee had title to the proceeds of the Plans for the benefit of the Debtor's creditors. On May 24, 1993, the Lockheed Plan Administrator placed a hold on the Debtor's account. Accordingly, the Debtor's Application was not processed and no distribution was made. On June 2, 1993, the Court temporarily enjoined Defendant Lockheed from paying any Plan benefits to the Debtor.

## II. STANDARD OF REVIEW

Pursuant to 11 U.S.C. § 158, the District Court sits as an Appellate Tribunal and shall review the facts and findings of the Bankruptcy Court. The District Court reviews findings of fact under the "clearly erroneous" standard. *Nordberg v. Arab Banking Corp. (In re Chase Sanborn Corp.)*, 904 F.2d 588, 593 (11th Cir.1990); Fed.R.Bankr.P. 8013. A finding of fact is clearly erroneous "if the record lacks substantial evidence to support it," *Thelma C. Raley, Inc. v. Kleppe*, 867 F.2d 1326, 1328 (11th Cir.1989), so that the Court has the "definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). The District Court reviews conclusions of law *de novo*. *Nordberg*, 904 F.2d at 593.

## III. DISCUSSION

Appellant Trustee contends that the benefits at issue in this case are "property of the estate" and, thus, should be available for distribution to the Debtor's creditors. Indeed, "[t]he commencement of a case ... creates an estate. Such estate is comprised of ... *all legal or equitable interests* of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (empha-

sis supplied). "The Bankruptcy Code [,however,] excludes from the bankruptcy estate property of the debtor that is subject to a restriction on transfer enforceable under 'applicable nonbankruptcy law.' 11 U.S.C. § 541(c)(2)." *Patterson v. Shumate*, 504 U.S. 753, 755, 112 S.Ct. 2242, 2245, 119 L.Ed.2d 519, 525 (1992). "The anti-alienation provision required for ERISA qualification ... constitutes an enforceable transfer restriction for purposes of § 541(c)(2)'s exclusion of property from the bankruptcy estate." *Id.* at 760, 112 S.Ct. at 2248, 119 L.Ed.2d at 528. Thus, "a debtor's interest in an ERISA-qualified pension plan may be excluded from the property of the bankruptcy estate pursuant to § 541(c)(2)." *Id.* at 765, 112 S.Ct. at 2250, 119 L.Ed.2d at 532.

Appellant does not contest the conclusion that the Benefit Plan and the Savings Plan are ERISA-qualified pension plans. The only question remaining, therefore, is whether the Plans' restrictions apply to the Debtor's benefits in the particular factual posture of this case.

Appellant makes much of the fact that the Debtor elected to have his interest in the plans distributed to him immediately. Appellant notes that there is nothing left for the Debtor to do in order to have his interest in the Plans distributed. He notes that but for the Bankruptcy Court's temporary injunction, the proceeds would have been automatically distributed to the Debtor.

The Court notes, however, that the Defendant made this election after filing his bankruptcy petition. The Court concludes that "property of the estate" is to be identified as of the time of commencement of the case. *In re Addario*, 53 B.R. 335, 337 (Bankr.D Mass.1985) ("The first issue presented is what is the extent of the trustee's interest in the property. The debtor's interest in the property as of the date of the filing is determinative."). Because the Debtor had not yet elected an immediate distribution at

the time this case commenced, the fact that the Debtor eventually made such an election is irrelevant. All that the Debtor owned at the time he filed for bankruptcy was a "right" to elect an immediate distribution. The Plans' restrictions require that "[n]o *right or benefit* provided for in this plan shall ... be subject to ... bankruptcy or insolvency proceedings of any kind." (emphasis added). As such, the Debtor's interest in the Plans falls squarely within the ERISA transfer restrictions on Plan "rights or benefits." [1] *But See Velis v. Kardanis*, 949 F.2d 78, 82–83 (3rd Cir.1991).

Even were the Court to assume that the Debtor's election was somehow relevant, the Trustee's position would still not prevail. For instance, Appellant appears to contend that the Debtor's election of an immediate distribution took the proceeds outside of the plan's transfer restriction. He argues that the Debtor's interest in the Plans has been transformed to the equivalent of cash in the Debtor's bank account which is not restricted by Plan provisions.

The transfer restrictions, however, prohibit transfers of the Defendant's "right[s] or benefit[s]." The Court concludes, therefore, that as long as the Debtor's interest in the Plans can be considered a "right or benefit," it is subject to enforceable transfer restrictions which exclude it from the bankruptcy estate. The Court concludes that until the Debtor actually has the Plans' proceeds in his possession, all the Debtor owns is a "right" to them. The fact that the Debtor has been laid off and has elected to take immediate possession of the proceeds only changes the time frame in which he may take possession. It does not change the fact that his interest in the Plans is still merely a right to receive proceeds in the future.

The Court, furthermore, concludes that his interest in the Plans remains a "benefit" until he takes possession. The Court can conceive of no act or occurrence that would signal the point at which the Plans' proceeds lose their

---

1. The Court notes that the Trustee appears to concede this conclusion when he says: "[i]f ... an election or non-election was made to hold the funds until age sixty-five then they are excluded from the bankrupts' estate under § 541(c)(2)." Appellant's Reply Brief at 6. The assumption upon which the Trustee's statement must be based is that the mere right to elect an immediate distribution at the time of filing bankruptcy is not enough to take the Debtor's interest in the Plan out of the scope of the Plans' transfer restriction.

character as "benefits" other than the Debtor's taking actual possession. Plan proceeds often become indistinguishable from a Plan participant's other financial assets at this point and are no longer "benefits," but instead are merely "assets." In sum, the Bankruptcy Code requires the Court to uphold the Plans' transfer restrictions and no other interpretation of the scope of those restrictions would be true to the language used. *See Velis*, 949 F.2d at 82 ("Section 541(c)(2) ... does [not] apply to assets in the *possession* of the debtor.").

Appellant contends that the fact that the Debtor has elected an immediate distribution distinguishes this case from *Patterson* in which the Supreme Court held that ERISA Plan benefits are not property of the estate. The Court concludes, however, that this argument is without merit. In fact, the Plan in *Patterson* had been liquidated and full distributions made to all participants except the debtor. The debtor, moreover, had filed suit to compel the Plan to pay him his interest. *Id.* at 754–56, 112 S.Ct. at 2244–45, 119 L.Ed.2d at 525. Payment to the debtor in *Patterson*, therefore, could hardly be characterized as less imminent than payment to the Debtor in the instant case. As such, the proceeds in the instant case are no less "restricted" than they were in *Patterson* when they were held to be excluded from the bankruptcy estate.

Finally, Appellant contends that the Debtor's election, or alternatively his capacity to make an election for immediate distribution, brings this case within a line of cases holding that a debtor's "control" over the proceeds of a plan bring his right to proceeds within the bankruptcy estate. *See, e.g., In re Strehlow*, 84 B.R. 241 (Bankr.S.D.Fla.1988). The Court concludes, however, that these cases are irrelevant to the issues before the Court. At issue in each case was whether a transfer restriction was enforceable under state spendthrift trust law. 11 U.S.C. § 541(c)(2). In each case, the court determined that too much control over a trust's benefits makes a trust transfer restriction unenforceable under state spendthrift trust law. The transfer restrictions of those trusts, therefore, were also unenforceable in bankruptcy unless another law made the provisions enforceable. *In re Strehlow*, 84 B.R. at 244 ("A trust is unenforceable as a spendthrift trust where the terms of the trust permit the beneficiary to exercise dominion and control over the funds in the trust."); *Matter of Rolfe*, 34 B.R. 159 (Bankr.N.D.Ill.1983); *In re May*, 83 B.R. 812, 814 (Bankr.M.D.Fla.1988) ("a spendthrift trust ... fails, under Florida law, where the beneficiary exercises absolute dominion over trust property."); *Matter of Cook*, 43 B.R. 996 (Bankr.N.D.Ind.1984) ("For a particular plan to come within the term of § 541(c)(2), it must be demonstrated that the plan meets the [state law] definition of spendthrift trust"). *Patterson* establishes, however, that transfer restrictions in ERISA qualified plans, such as those in the instant case, are enforceable in bankruptcy. The issue of the Debtor's control over the trust benefits, therefore, is irrelevant.[2]

For all of the aforementioned reasons, the Court concludes that the Debtor's interest in Defendant Lockheed's Plans is not property of the bankruptcy estate.

### IV. CONCLUSION

Accordingly, the Court **affirms** the Bankruptcy Court's August 23, 1994 Order.

IT IS SO ORDERED.

---

**2.** Appellant also cites *In re Woodson*, 839 F.2d 610 (9th Cir.1988), in which the Ninth Circuit held that though an insurance policy was not property of the estate, its proceeds were. Appellant contends that the instant issue is analogous where ERISA benefits are not usually property of the estate but are under the facts of this case. The Court concludes, however, that *Woodson* is irrelevant. At issue in that case was the relationship between 11 U.S.C. § 522 and § 541(a)(1). *Id.* at 618. Because resolution of the instant case is driven by the Court's interpretation of § 541(c)(2) and § 541(a)(1), the holding in *Woodson* is inapplicable.