## In re Ronald J. YUHAS, Debtor.

### Bankruptcy No. 95–30368.

United States Bankruptcy Court, D. New Jersey.

Sept. 15, 1995.

Peter J. Broege, Broege, Neumann & Fischer, Manasquan, NJ, for debtor.

Thomas J. Orr, Burlington, NJ, for Chapter 7 Trustee.

## MEMORANDUM OPINION

KATHRYN C. FERGUSON, Bankruptcy Judge.

This matter comes before the court on cross motions to determine whether the Debtor's Individual Retirement Account ("IRA") is property of the bankruptcy estate. The facts presented to the court are essentially undisputed. The Debtor, Ronald J. Yuhas, filed a petition under Chapter 7 of the Bankruptcy Code on January 18, 1995. In his petition, the Debtor listed an IRA valued at $143,000 as personal property. *See,* Debtor's Petition, Schedule B, ¶ 11. Next to the listing of the IRA was the notation "not property of the estate pursuant to N.J.S.A. 25:2–1(b)." *Id.* Because the Debtor claimed the IRA was excluded from the estate rather than exempted, he elected the federal exemptions. Debtor filed the within motion requesting an order confirming his assertion that the IRA was not property of the estate, and the Trustee cross moved for a declaration to the contrary.

### *DISCUSSION*

The Bankruptcy Code defines property of the estate to include "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). Neither party disputes that the Debtor's IRA falls within the broad parameters of that definition.

■ The crux of the controversy is whether the exclusion contained in section 541(c)(2) removes IRAs from the ambit of that definition. Section 541(c)(2) provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2). Application of the exclusion to a particular asset requires the court to make at least three distinct determinations: 1) does the debtor have a beneficial interest in a trust; 2) is the transfer of that interest restricted; and 3) is the restriction

enforceable under applicable nonbankruptcy law.

## THE DEBTORS INTEREST IN AN IRA CREATES A BENEFICIAL INTEREST IN A TRUST

 The first determination can be dispensed with dispatch, so much so that the parties have not even addressed it. The Bankruptcy Code does not define the term "trust". Generally, a trust consists of "[a]ny arrangement whereby property is transferred with intention that it be administered by trustee for another's benefit." *Black's Law Dictionary* 1508 (6th ed. 1990). The Restatement defines the term as a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of the other person. *Restatement (Second) of Trusts* § 2 (1987). More germanely, under N.J.S.A. 25:2–1(b) a qualifying trust is defined as a trust created or qualified and maintained pursuant to federal law, including section 401, 403, 408, or 409 of the Internal Revenue Code. Since the IRA at issue was created pursuant to 26 U.S.C. § 408, it is a qualifying trust under the statute. It is beyond cavil that the IRA was established for the benefit of the Debtor.

## THE STATUTE CREATES A RESTRICTION ON TRANSFER

A. Attachment of a debtor's interest by a creditor constitutes a transfer

 The next requirement of section 541(c)(2) is that transfer of the corpus of the trust be restricted. The Bankruptcy Code defines transfer as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property...." 11 U.S.C. § 101(54) (emphasis added).

 Like the definition of "property of the estate", the definition of the term "transfer" is extremely broad, and has consistently been construed very broadly. *See, e.g., In the Matter of Freedom Group*, 50 F.3d 408 (7th Cir.1995) ("transfer" is defined broadly; includes issuance of final order of garnish-

ment); *Mellon Bank v. Metro Communications*, 945 F.2d 635 (3d Cir.1991), cert. denied, 503 U.S. 937, 112 S.Ct. 1476, 117 L.Ed.2d 620 (1992) (Code's definition of "transfer" is sufficiently broad to encompass a leveraged buyout of stockholders by a secured creditor). Most significantly, even the mere docketing of a judgment lien has been held to be a "transfer" under the Bankruptcy Code definition. *In re Babiker*, 180 B.R. 458 (Bankr.E.D.Va.1995). While the docketing of a lien is not a transfer in the ordinary sense of the word, it falls within the Code's broad definition because it involves the unconditional impairment of a debtor's interest. *See, Barnhill v. Johnson*, 503 U.S. 393 (1992) ("transfer" under the Code occurs when some interest of the debtor is unconditionally shifted).

 Given the broad definition of the term "transfer" and the myriad circumstances under which it has been held to apply, there can be little doubt that attachment by a creditor of a debtor's interest in property constitutes a transfer under the Code. Therefore, if such attachment is restricted under applicable non-bankruptcy law, the second prong of section 541(c)(2) has been met.

B. N.J.S.A. 25:2–1(b) restricts attachment by creditors

 The Supreme Court in *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), addressed the question of what law was encompassed in the phrase 'applicable nonbankruptcy law'. The Court held that section 541(c)(2) "contains no limitation on 'applicable nonbankruptcy law' relating to the source of the law." *Id.* at 758, 112 S.Ct. at 2246. *Cf., Barnhill v. Johnson*, 503 U.S. 393, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992) (while the definition of "transfer" and when it occurs are matters of federal law, bankruptcy courts must look to state law for the definition of property and interest in property). Thus, any applicable federal or state law may be considered when analyzing the exclusion contained in that section.

 N.J.S.A. 25:2–1(b) provides that any property held in a qualifying trust, which as noted earlier includes IRAs by statutory def-

inition, "shall be exempt from all claims of creditors...." New Jersey law straightforwardly restricts creditor access to funds held in IRAs both inside and outside of bankruptcy.

## THE RESTRICTION IS ENFORCEABLE UNDER APPLICABLE NONBANKRUPTCY LAW

A. Applicable nonbankruptcy law is not limited to state spendthrift trusts and ERISA qualified pension plans

■■■■■ The final question to be determined under section 541(c)(2) is whether the restrictions imposed by applicable nonbankruptcy law are enforceable in a case under Title 11. Prior to the Supreme Court's decision in *Patterson*, several courts took the position that Congress intended to limit section 541(c)(2) to restrictions on transfer that are enforceable only under state spendthrift trust law. *See, e.g., In re Goff,* 706 F.2d 574 (5th Cir.1983). Although the legislative history makes specific reference to state spendthrift trusts, there is no reason to consider the legislative history when the statute itself is clear. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290. When considering section 541(c)(2), the Third Circuit found that it was unreasonable to limit its application to state spendthrift trusts given the clarity of the statutory language. *Velis v. Kardanis,* 949 F.2d 78, 81 (3d Cir.1991). While there is antecedent case law to the contrary, *Patterson* and *Velis* make clear that 541(c)(2) does not require the creation of a state law spendthrift trust.

Other courts have suggested that a plan must be ERISA qualified in order to be enforceable under section 541(c)(2). *See, e.g., In re Lamb,* 179 B.R. 419 (Bankr.D.N.J. 1994). Yet the language of § 541(c)(2) is clear: just as it contains no reference to spendthrift trusts, it contains no reference to ERISA. While the *Patterson* case held that ERISA-required anti-alienation provisions were sufficient restrictions on transfer, it did not limit the source of restrictions to ERISA. There is no statutory or case law requirement that applicable nonbankruptcy law is limited to ERISA regulations.

B. The restriction on transfer need not be contained in the trust document itself

■■■ The most interesting question is whether the restriction on transfer must be contained within the plan or trust at issue in order to be enforceable. *See, e.g., In re Meehan,* 173 B.R. 818, 821 (S.D.Ga.1994) ("implicit in § 541(c)(2) ... is that the subject restriction is ... contained in the trust"); *In re Van Nostrand,* 183 B.R. 82, 85 (Bankr.D.N.J.1995) ("for a restraint on alienation provision to be enforceable pursuant to § 541(c)(2), the provision must be included in the investment plan."); *In re Lamb,* 179 B.R. 419, 423 (Bankr.D.N.J.1994) ("the Debtor's IRA account does not contain any anti-alienation clause that would place it within the confines of § 541(c)(2)").

These decisions gain support from the Supreme Court's statement in *Patterson* that "a debtor's interest in these plans [IRAs] could not be excluded under 541(c)(2) because the plans lack restrictions enforceable under 'applicable non-bankruptcy law'". 504 U.S. at 762, 112 S.Ct. at 2248. The Supreme Court noted that in order for a plan to be enforceable under ERISA, it must contain anti-alienation provisions. *Id.* at 760, 112 S.Ct. at 2248–49. In other words, the ERISA regulations happen to require that the restrictions appear in the trust document itself. The Court's statement regarding IRAs being excepted from ERISA's anti-alienation provision requirements, appears in the course of a discussion of the different impact of sections 522(d)(10)(E) and 541(c)(2) on several federally established pension plans. The context in which the cited dicta appears does not even suggest that the Court considered all of the ways that transfer of an IRA might be restricted. Conversely, the actual holding in *Patterson* is that § 541(c)(2) "entitles a debtor to exclude from property of the estate any interest in a plan or trust that contains a transfer restriction under any relevant non-bankruptcy law." *Id.* at 758, 112 S.Ct. at 2246 (emphasis added).

The court in *In re Meehan,* 173 B.R. 818 (S.D.Ga.1994), found that 541(c)(2) requires that the restriction must be contained in the plan or trust at issue, based partly upon the

*Patterson* dicta cited, and partly on a perceived tautology created from reading 541(c)(2) otherwise. As the *Meehan* court itself acknowledged, and as set forth above, the *Patterson* dicta cited by the bankruptcy court was "not beyond debate". The tautology employed by *Meehan* as further support of its position is, moreover, self-serving in that it is logically dependant upon application of the clause "in a trust" to modify the term "restriction" rather than the phrase "beneficial interest of a debtor". I respectfully disagree with the application chosen.[1] In my view, the more natural reading of the statutory language is that the restriction that must be enforceable under nonbankruptcy law is a restriction "on the transfer of a beneficial interest of the debtor in a trust".

A recent New Jersey case took this analysis one step further. In *In re Van Nostrand*, 183 B.R. 82 (Bankr.D.N.J.1995), Chief Judge Gindin concluded that even if a transfer restriction outside of the plan or trust could be applicable, N.J.S.A. 25:2–1(b) does not contain a sufficient restraint on transfer. *Id.* at 85. The *Van Nostrand* court found that the test for exclusion under 541(c)(2) is whether the *debtor* is precluded from transferring an interest in the IRA, not whether creditors can reach the IRA. *Id.* In support of that conclusion, the court cited only *In re Heisey*, 88 B.R. 47 (Bankr.D.N.J.1988), in which Judge Moore found that because the debtor was entitled to withdraw the IRA funds at anytime, there was no restriction on the transfer of the debtor's interest in a trust. The *Heisey* court specifically rejected the argument that N.J.S.A. 2A:17–50, which made the IRA exempt from levy by judg-

ment creditors, provided the necessary restriction on transfer. Judge Moore rejected that argument not because protection from levy by judgment creditors was insufficient, but because IRAs do not qualify as spendthrift trusts. *Id.* at 50. Post *Patterson*, it is clear that whether a statute creates a spendthrift trust is not determinative of the question of restriction under 541(c)(2). *Patterson* at 761, n. 4, 112 S.Ct. at 2248 n. 4. Thus, this court most respectfully disagrees with reliance on *Heisey* for the proposition that the appropriate test is debtor access rather than creditor access to the trust.

C. N.J.S.A. 25:2–1(b) creates an enforceable restriction on transfer

 Having determined that the transfer restriction need not be in the trust itself, we turn to the language of N.J.S.A. 25:2–1(b) itself to decide if it contains an enforceable restriction on transfer as contemplated by 11 U.S.C. § 541(c)(2). The statute provides that "[a]ny property held in a qualifying trust ... shall be exempt from all claims of creditors and shall be excluded from an estate in bankruptcy...." N.J.Stat. Ann. 25:2–1(b). The statutory language makes it clear that an IRA is exempt from the claims of creditors. As noted earlier, the Bankruptcy Code defines transfer to include involuntary attachment by creditors. The statute is a duly promulgated law of the state of New Jersey, which has not been invalidated on constitutional or other grounds.[2] Thus, N.J.S.A. 25:2–1(b) provides the necessary restriction on transfer to bring an IRA within the exception to property of the estate. Accordingly, the Debtor's IRA is not

---

**1.** As is not uncommon, the language of Code is not a model of clarity. Section 541(c)(2) contains four separate prepositional phrases following the word "restriction". The phrase "on the transfer" is closest to, and logically modifies, the word "restriction." The remaining phrases immediately follow the placement of the word "transfer" and, of a piece, describe what may not be transferred, that is, "a beneficial interest of the debtor in a trust." The phrase "in a trust" describes the debtor's interest rather than the restriction.

Filling in the blanks (as did Judge Bowen in *Meehan* ) yields the following: "a restriction on transfer ... enforceable under [N.J.S.A. 25:2–1(b) ], is enforceable in a case under this title".

**2.** In his *Van Nostrand* decision, Chief Judge Gindin found the statute to be an exemption statute rather than an exclusion statute, and on that basis found that it would be unenforceable under the doctrine of federal preemption. Because this court's analysis turns purely on restrictions under the New Jersey law rather than the portions of the statute that attempt to either exempt or exclude property from the estate, the doctrine is not called into play by this analysis. Once it is determined that N.J.S.A. 25:2–1(b) provides a restriction on transfer which removes an IRA from property of the estate, the question of whether the statute purports to be an exclusion or an exemption statute is a red herring.

property of the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2).

## EXCLUSION FROM THE ESTATE IS CONSISTENT WITH PUBLIC POLICY UNDERLYING THE CODE AND THE CASE LAW

■ The subsurface current underlying the decisions that deny 541(c)(2) status to self settled trusts seems to be the concern that exempting IRAs from property of the estate will allow people to place assets beyond the reach of their creditors by setting up revocable trusts for their own benefit. There is understandable resistance to the idea that debtors could be permitted to place assets in revocable trusts for their own benefit and thereby insulate them from the claims of creditors.

■ While this argument has a certain gut-level appeal, it fails to take into consideration that debtors are already permitted that right under New Jersey law. Outside bankruptcy, N.J.S.A. 25:2–1(b) shields any funds in an IRA from the claims of creditors. Debtors in New Jersey are thus already permitted to place assets beyond the reach of creditors by placing them in self-settled trusts.[3] A debtor transferring assets to IRAs for the sole purpose of utilizing N.J.S.A. 25:2–1(b) remains subject to the good faith requirements of the Bankruptcy Code. To that extent, the Bankruptcy Code provides creditors greater protection from abuse than they receive under state law. This concern was squarely addressed by the Third Circuit in *Velis v. Kardanis*, 949 F.2d 78, 82 (3d Cir.1991), which stated "[p]resumably, substantial or unusual contributions to self-settled trusts made within the preference period or with intent to defraud creditors should receive no protection under either § 541(c)(2) or § 522(d)(10)(E)."

Moreover, The United States Supreme Court has consistently held that while federal law defines "property of the estate," bankruptcy courts must look to state law for the definition of property and what constitutes an interest in property. *See, Butner v. U.S.*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1978); *Barnhill v. Johnson*, 503 U.S. 393, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992). The concern driving this deference to state law is the idea that the treatment of property interests should be uniform inside and outside of bankruptcy, thus preventing "a party from 'receiving a windfall merely by reason of the happenstance of bankruptcy.'" *Butner*, 440 U.S. at 55, 99 S.Ct. at 918, quoting *Lewis v. Manufacturers National Bank*, 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323 (1961). If this court were to hold that a creditor could reach an IRA of a debtor in bankruptcy that it would not be entitled to reach under state law, creditors might be encouraged to file involuntary petitions against individuals for the sole purpose of obtaining access to funds unavailable under state law. This most undesirable possibility is precisely the type of result the *Butner* holding seeks to avoid.

Finally, the Third Circuit has recognized the depth of Congressional concern for protection of retirement savings. Although the *Velis* court held that transfer of the debtor's IRA was unrestricted due to that particular debtor's age, the court stated:

> there can be no doubt that Congress has expressed a deep and continuing interest in the preservation of pension plans, and in encouraging retirement savings, as reflected in the statutes which have given us ERISA, Keogh plans and IRAs. We believe it reasonable to conclude that Congress intended to provide protection against the claims of creditors for a person's interest in pension plans, unless vulnerable to challenge as fraudulent conveyances or voidable preferences.

*Velis v. Kardanis*, 949 F.2d 78, 82 (3d Cir. 1991). Clearly, the Third Circuit is receptive to appropriate legislative attempts to further the important public policy of encouraging and protecting retirement savings.

**3.** The case of *Aronsohn & Springstead v. Weissman*, 230 N.J.Super. 63, 552 A.2d 649 (App.Div. 1989), cert. den., 117 N.J. 36, 563 A.2d 808 (1989) was decided before enactment of N.J.S.A 25:2–1(b), and focussed instead on N.J.S.A.

3B:11–1. The *Aronsohn* court also relied extensively on the very line of cases subsequently rejected by both the Third Circuit in *Velis v. Kardanis* and the Supreme Court in *Patterson v. Shumate*.

## CONCLUSION

The vagaries of our tax laws are such that when an employee is separated from his or her employer, either voluntarily, involuntarily or when the employer's business terminates, the employee often must roll an ERISA pension or 401K into an IRA or face substantial diminution of his or her retirement fund. Both the Third Circuit and the U.S. Supreme Court have recognized the importance of the various Congressional policies encouraging individuals to save for their retirement. Where statutory definitions and statutory language combine to create a clear pathway accessing that policy, this court feels compelled to follow it. Counsel for the Debtor shall submit a form of order determining that the Debtor's IRA is not property of this estate.