AMERICAN SURETY CO. v. FREED et al.

In re BREAKWATER CO.'S ESTATE.

(Circuit Court of Appeals, Third Circuit. July 24, 1915.)

No. 1933.

1. BANKRUPTCY ☞223, 368—REFEREE—TRUSTEE—COMPENSATION—STATUTORY PROVISIONS.

Bankr. Act July 1, 1898, c. 541, §§ 40a, 48a, 30 Stat. 556, 557, as amended by Act Feb. 5, 1903, c. 487, §§ 9, 11, 32 Stat. 799, and Act June 25, 1910, c. 412, § 9, 36 Stat. 840 (Comp. St. 1913, §§ 9624, 9632), providing that referees shall receive as full compensation from assets which have been administered 1 per cent. commission on all moneys distributed to creditors, and that trustees shall receive commissions on all moneys disbursed or turned over to any person including lienholders, when considered with section 72 (Comp. St. 1913, § 9656), providing that neither the referee nor trustee shall in any form receive, nor shall the court allow him, any other compensation than that expressly prescribed, provide for compensation for services rendered by referees and trustees based on a difference in disbursements, and their commissions are controlled by the one test, which is that the two shall receive as full compensation commissions on moneys disbursed.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 571, 888–894; Dec. Dig. ☞223, 368.]

2. BANKRUPTCY ☞223, 368—REFEREE—TRUSTEE—COMPENSATION—STATUTORY PROVISIONS—"MONEY DISTRIBUTED"—"MONEY DISBURSED."

Where the assets of a bankrupt corporation were mortgaged to secure claims, and a plan was devised to preserve the bankrupt's property, whereby its assets were to be transferred to a new corporation, the secured and unsecured creditors to receive stock for their claims, and in pursuance of the plan the assets were sold subject to the liens for a small sum, the commissions of the referee and trustee must be determined on the cash actually received, for it was the only money distributed or disbursed within Bankr. Act, §§ 40a, 48a, as amended by the acts of 1903 and 1910, fixing compensation of referees and trustees, based on commission on moneys distributed and disbursed.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 571, 888–894: Dec. Dig. ☞223, 368.

For other definitions, see Words and Phrases, Second Series, Money Disbursed.]

Petition for Review and Appeal from the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

In the matter of the Breakwater Company, a bankrupt. There was an order (220 Fed. 226) dismissing the petition of the American Surety Company for a review of an order allowing commissions to Rhine Russell Freed, trustee, and Edward F. Hoffman, referee, and petitioner petitions for review of and appeals from the order of dismissal. Reversed.

William H. Hotchkiss, of New York City, for appellant.

Owen J. Roberts, of Philadelphia, Pa., for appellees.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. The petitioner asks a revision of an order of the District Court for the Eastern District of Pennsylvania, dismissing its petition for a review of an order of a referee in bankruptcy. The referee's order was made in the bankrupt estate of the Breakwater Company, and allowed commissions to the referee and trustee each in the sum of $6,500.

The Breakwater Company was a corporation engaged chiefly in constructing breakwaters for the United States government in its home ports and in the ports of its colonial possessions. An involuntary petition in bankruptcy was filed against it, adjudication followed, and in due course the administration of its estate devolved upon the respondents as trustee and referee respectively. The assets of the bankrupt consisted of stone quarries and their equipment, owned and leased in various states of the United States, in Canada and the Hawaiian Islands, together with a great quantity of floating equipment, such as tugs, derrick barges, pocket barges, etc., well distributed over the waters of the northern half of the Western Hemisphere. The assets were appraised at something over $1,000,000, a part of which was retained by the government upon incompleted contracts.

A considerable part, if not all, of the physical property of the bankrupt was covered by a mortgage for $1,000,000, issued to secure bonds for a like amount. As the mortgage was not filed in certain jurisdictions in which property of the bankrupt was located, there arose a question whether the mortgage was a lien upon a portion of the bankrupt's property, worth about $200,000.

Property of the character indicated, its distribution over a wide area, and the bankrupt's liability upon its incompleted contracts with the government, made the estate difficult of administration. The trustee of the mortgage threatened, and in fact instituted, proceedings of foreclosure. The trustee of the estate was unable to interest outside parties in the purchase of the property as a going concern. Sold otherwise, it was obvious that the property would produce little more than its value as junk. The situation was further complicated by the floating property of the bankrupt being libelled for maritime liens. The cost of litigation and conservation was making rapid and substantial inroads upon the estate's limited quantity of ready funds.

In this condition of affairs, a bondholders' protective committee proposed to the trustee a plan for the purchase of all the property purported to be covered by the mortgage, including the portion in dispute. The plan involved a private sale of the property by the trustee, approved by the referee, for the purchase price of $75,000, of which $35,000 was to be paid upon the acceptance of the offer, and $40,000 to be paid when required for distribution. The proposed sale of the bankrupt's assets was to be made subject to the mortgage of $1,000,000, and accrued interest, and also subject to maritime liens, aggregating about $75,000.

The creditors of the bankrupt were, as usual, of two classes, secured and unsecured. The holders of the bonds under the mortgage were secured creditors to the amount of $1,000,000, and interest. They did not file claims against the estate. The claims of unsecured

creditors filed against the estate amounted approximately to the sum of $1,300,000.

The plan contemplated, first, the purchase, for the consideration stated, of the physical assets of the Breakwater Company, encumbered with all liens; then a re-capitalization of those assets by the formation of a new corporation to be known as the Coast & Lakes Contracting Company, with stock sufficient to care for and discharge the entire indebtedness of the Breakwater Company by the exchange of preferred stock for the bonds of secured creditors and common stock for the assigned claims of unsecured creditors. By this means, the property purchased was to be disencumbered and the bankrupt's indebtedness to its secured creditors, cancelled. The scheme, however, did not include the discharge of the bankrupt's indebtedness to its unsecured creditors. Creditors of this class were required to transfer and assign to the new corporation their proven claims, so that it might receive all dividends declared thereupon. Into this arrangement all creditors, both secured and unsecured, entered, except the American Surety Company, the petitioner.

As the bondholders' committee was to furnish the $75,000 cash consideration for the proposed purchase, and as the new corporation would become the holder by assignment of the claims of the unsecured creditors, and therefore would become the principal, if not the sole, creditor entitled to dividends, the committee was naturally anxious to preserve to it in dividends as much of the cash advanced as possible, and was therefore interested in seeing that that sum was not absorbed by administration charges and costs. The bondholders' committee, therefore, drove a bargain with the referee and the trustee, who, while maintaining that they were entitled to commissions computed on the entire amount of the bankrupt's indebtedness discharged by the capital stock of the new corporation, agreed to a deduction, and stipulated that they would each be content with and would charge as commission no more than the sum of $6,500.

These matters were very generally discussed and agreed to at informal meetings between the bondholders' protective committee, the referee and the trustee, and resulted in the trustee presenting a petition to the referee praying for an order to sell the assets of the bankrupt at private sale. This petition did not recite the scheme of reorganization contemplated by the parties, but presented, in the usual way, the character of the bankrupt's property, the fact that it was incumbered with a mortgage for $1,000,000 and other liens, the advantage of selling its assets as a going concern, the receipt of an offer to purchase the same at private sale, subject to the lien of the mortgage and all other liens, for the sum of $75,000; that the trustee believed the offer to be a fair one, and "that the price mentioned in said offer is more than 75 per cent. of the appraised value of the said property, amounting as it does in the total to at least $1,125,000, for the reason that the said sale is made subject to the lien of the mortgage and all other valid liens and thus relieves the bankrupt's estate of any claim or charge, by reason of said mortgage or any other claims which are represented by liens, whether maritime or

otherwise." Pursuant to the prayer of the petition, an order was entered for the sale of the property. The sale was afterward made and confirmed, and the referee and trustee each allowed commissions to the extent of $6,500.

The American Surety Company presented to the District Court a petition for a review of the order allowing the commissions stated. The District Court dismissed the petition and affirmed the allowance of commissions, in an opinion appearing in 220 Fed. 226. The American Surety Company now asks a revision of that order.

[1, 2] The provisions of the statute, authorizing and prescribing the commissions to be allowed referees and trustees in bankruptcy, are section 40a and section 48a of the Bankruptcy Law, as amended by the acts of 1903 and 1910, and are as follows:

"Sec. 40a. Referees shall receive as full compensation for their services, * * * from estates which have been administered before them one per centum commissions on all *moneys disbursed to creditors* by the trustee. * * * "

"Sec. 48a. Trustees shall receive for their services, * * * such commissions on all *moneys disbursed or turned over to any person, including lien holders,* by them, as may be allowed by the courts, not to exceed. * * * "

The commission legally payable to the referee or trustee being thus controlled and measured by the "moneys disbursed," or "moneys disbursed or turned over," the learned judge found, in accordance with the fact, that only $75,000 had been delivered or was deliverable to the trustee from the sale of the property, to be actually disbursed or turned over; that the property, which included the portion encumbered by liens, subject to which the property was sold, was recapitalized, and against it stock of a new company was issued, which stock was employed in paying or discharging the debts of the bankrupt, and he therefore concluded that the discharge of the debts of the bankrupt estate by stock representative of the value of the bankrupt's assets, amounted to a constructive disbursement thereof by the trustee to its secured and unsecured creditors, and entitled the referee and trustee to commissions calculated thereupon, or to a lesser sum, if they agreed to a reduced compensation, and for authority cited Varney v. Harlow, 210 Fed. 824, 127 C. C. A. 374; In re Cramond (D. C.) 145 Fed. 966; In re Sanford Co. (D. C.) 126 Fed. 888.

The authorities cited and relied upon, are cases in which the assets of a bankrupt estate were sold *clear of liens* and not subject to liens, and in which the secured creditor became the purchaser and was permitted to use his security in meeting his purchase, that is, in paying for the property with his bonds instead of cash. In such a case, nothing came into the hands of the trustee for distribution or disbursement either to the lien holder himself or to other creditors. But in such a case, the courts have held that when the secured creditor becomes the purchaser, he is in a sense a party to the bankruptcy proceeding, and though not receiving anything by actual disbursement, he nevertheless receives a payment of his debt by acquiring the property, and that something equivalent to money has passed in the transaction and constructively has passed through the hands of and been disbursed by the trustee, and therefore the officers of the court should not be

deprived of their compensation merely because the lien holder, who becomes a purchaser, finds it more convenient to pay in securities than in money.

The case under review does not require us to approve or follow that law. We are asked, however, upon its authority, to go somewhat beyond it, or rather to do what we believe to be an altogether different thing. We are not asked to hold that the consideration for which bankrupt property is purchased, when not actually paid, may, under certain circumstances, be considered constructively received and disbursed, for in this case the consideration for the purchase was actually paid, and has been, or will be, actually disbursed. We are asked to hold, when bankrupt property is sold subject to liens, and when by arrangement between the purchaser and the creditors of the bankrupt estate, the property is afterwards employed in releasing the liens and thereby in discharging the estate of a part of its indebtedness, that the *"indebtedness* was constructively disbursed by the trustee," meaning, we assume, that the trustee permitted or participated in a transaction, the result of which was equivalent to the disbursement of money and the payment of the estate's indebtedness, and therefore commissions to the court's officers should be based upon the amount of indebtedness cancelled by the transaction, as well as upon the amount of the consideration actually paid for the property and disbursed. This is a novel proposition, unsupported by authority.

In this case, the only thing that came to the trustee from the sale of the bankrupt property was the cash consideration for which it was sold, namely, $75,000. It does not appear from the petition for an order of sale or from the decree ordering the sale, or from any feature of the general plan of reorganization, that anything other than the cash consideration was to be paid to or to be received by the trustee. The property was sold cum onere, and because the burden of the debts was considerable, the cash consideration was correspondingly inconsiderable. The trustee sold for a small consideration his only salable interest in the property, namely, the value of the property, over and above the liens on the property. The bondholders bought nothing except the equity of redemption and for that they paid cash. In substance, they were already the owners of the rest of the mortgaged property (In re Torchia, 188 Fed. 207, 208, 110 C. C. A. 248), and after they bought the equity of redemption, they owned the whole of the property and could do with it as they pleased. That nothing but the equity of redemption was sold or attempted to be sold by the trustee is disclosed by the statement of the trustee in his petition for an order to sell at private sale, wherein, to bring the matter within the requirement of the statute, he stated that $75,000, the amount offered, was "more than 75 per cent. of the appraised value of the property, * * * for the reason that the said sale is [to be] made subject to" all liens.

While the title to the whole property was vested in the trustee, and while, for the price stipulated, he sold the whole of it, nevertheless the amount of the purchase price was determined by the value of the property above its encumbrances. The purchase price of $75,000 was all

224 F.—22

the return from the sale of the bankrupt property that could have come into the hands of the trustee, and all that by the terms of the plan of reorganization was intended to come into his hands. No actual disbursement of the stock of the new corporation, in taking up the secured and unsecured claims of the bankrupt, was contemplated to be made by the trustee. In fact, such a thing could not actually have been done even within the scope of the scheme, for first the bondholders or secured creditors did not prove their claims, and no disbursements could have been made by the trustee to persons who were not claimants; and second, delivery of stock to the unsecured creditors was not intended either as payment or cancellation of their claims against the bankrupt. The effect of the stock transaction with the unsecured creditors was simply to substitute in their hands the stock indebtedness of the new corporation for the contractual indebtedness of the bankrupt corporation, the latter of which was not discharged nor disturbed, but remained alive in the hands of the new corporation as assignee. The trustee, therefore, did nothing and could do nothing, either in disbursing moneys beyond what was actually received or in discharging or cancelling the bankrupt's indebtedness by any constructive action of his own. The indebtedness of the corporation cancelled under the plan of reorganization, was cancelled after the property was purchased and acquired by those who used it in capitalizing a new corporation, and in persuading certain of the bankrupt's creditors to accept the stock obligations of the new corporation in lieu of their claims against the old corporation, a matter wholly outside of the Bankruptcy Court. The case, therefore, is resolved into one question, whether the referee and trustee may claim and receive commissions based upon the discharged indebtedness of the bankrupt.

Claims for commissions by referees and trustees in the cases cited, based upon "moneys [constructively] disbursed," may be distinguished from the claims for commissions in this case, based upon indebtedness cancelled. Within the principle of the claims in the cases cited, property is sold *free of liens*. The bid made is for the full value of the property. The purchase price paid is for its full value. What is purchased is property unencumbered with debts of the bankrupt. What is constructively disbursed is that which is received for its full value. In the case under consideration, the bid was made not with respect to the full value of the property, but with especial regard to its encumbrances, which were not dislodged by the sale but were transferred with and remained upon the property. The consideration paid, represented but a part of the value of the property, because the rest of the value of the property was affected and covered by encumbrances; but the consideration paid and disbursed represented all the value of the property which the trustee had to sell, and for which a consideration was to be received and disbursed by him. When the property was sold subject to liens, the lien holders looked to and afterwards resorted to the property to discharge their debts, and not to the bankrupt estate, or at least not primarily to the bankrupt estate. This was the thing done by the secured creditors who, in failing to file claims against the estate, declined to look to the estate for the payment of

its indebtedness. They looked to the property which they had bought subject to their liens. This was done not in the course of the official administration of the estate, but by a transaction which in its nature was private in the sense of being unofficial. It was done by the creditors themselves, and though made possible by the assent of the referee and trustee, it was not done by those officials. The result, so far as the estate is concerned, was the release of debts which, though not proven, might have been proven; and in discharging the indebtedness of the estate by resorting to the property secured by the lien, the secured creditors chose to do by agreement what they could have done by foreclosure proceedings. As no claim for commissions could have been made by the referee and trustee, based upon the amount of indebtedness discharged by foreclosure proceedings instituted and prosecuted by the lienors without relation to the bankruptcy administration, is it not equally certain that no claim for commissions can be based upon a like amount of indebtedness discharged by other means employed by the lienors in reducing their securities either to cash or possession?

The only authority for the payment of commissions to referees and trustees is found in the bankruptcy law, which has already been cited. Compensation to the two officers, as provided by law, is based upon a difference in disbursements. Their commissions are alike controlled, however, by one general test, which is that the two officers shall receive as *full* compensation for their services, commissions on "moneys disbursed," and whether the disbursement be "to creditors" or "to any person, including lienholders," is unimportant for present consideration. The question is, whether the transaction in issue amounted to a disbursement of moneys by the trustee. That this was all that the law contemplated should be received by these two officers, is further shown by section 72 of the act, which provides "that neither the referee * * * nor trustee shall *in any form or guise receive,* nor shall the court allow him, any other or further compensation for his services than that *expressly* authorized and prescribed by this act." This section was originally enacted by the act of 1903 and was part of an act which enlarged the compensations to referees and trustees in bankruptcy over what was provided by the original act. It is therefore apparent that Congress intended by the amendments to section 40a and section 48a to provide what it considered ample compensation for services to be rendered by referees and trustees, and by section 72, to relieve the courts of the necessity of determining what constitutes legal compensation for those officers.

The fees allowed the referee and trustee in this case were not based upon moneys disbursed, as those words are used in the statute (except the cash consideration of $75,000), nor upon moneys constructively disbursed, as that term is employed in the cases cited, but were based upon debts discharged by the creditors of the estate voluntarily cancelling a part of the obligations of the estate and looking to other sources for reimbursement.

It was a transaction above, beyond and wholly outside of the bankruptcy court. If the referee and trustee had attempted such a thing

as the recapitalization of the bankrupt's property and the issue and distribution of the stock of the new corporation, a claim for commissions, based upon the volume of indebtedness thereby discharged, would have been as fully without sanction of law as the transaction itself. If the same thing is done by others, the referee and trustee are no more entitled to commissions than if they had done the thing themselves.

We can find no authority in the law for an allowance of referee and trustee commissions upon such a basis. It is to be regretted that there is no law authorizing compensation to a referee and a trustee proportionate to the difficulties encountered in administering an estate of the character of the bankrupt in this case. That this estate was well managed by the referee and trustee is not denied even by the American Surety Company. This company, in petitioning for the disallowance of commissions, admits its sole object to be the maintenance of as large a fund in the hands of the trustee as may be, so that it may hereafter present a claim of preference for the whole of that fund.

The decree dismissing the petition for review of the order of the referee, and affirming the order of the referee, is reversed.