**In re The LANDING, INC., Ponderosa Park Resort, Inc., Debtors.**

**Bankruptcy Nos. 688–01415, 688–01441.**

United States Bankruptcy Court, N.D. Ohio.

April 30, 1992.

Marc B. Merklin, Brouse & McDowell, Akron, Ohio, for Geico Financial Services, Inc.

Ronald M. Rubenstein, Rubenstein, Novak, Einbund, Pavlik & Celebrezze, Cleveland, Ohio, for the Chapter 11 Trustee.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Chief Judge.

The court comes now to consider Interim and Final Fee Applications of Ronald M. Rubenstein (Trustee), the Chapter 11 Trustee for The Landing, Inc. (Landing) and Ponderosa Park Resort, Inc. (Ponderosa) (collectively, Debtors). Objections to these applications were filed by Geico Financial Services, Inc. (Geico). The matter was heard March 18, 1992. Final oral arguments were presented March 25, 1992.

The court has jurisdiction in this matter by virtue of 28 U.S.C. § 1334(b) and General Order No. 84 entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## HISTORY OF THE CASES

These Chapter 11 cases were filed in October, 1988 and the Trustee was appointed in November of that year. The Trustee, over a three year period, was extensively involved in the day to day management of the two campgrounds which comprised Debtors' business. A cooperative effort among the Trustee and numerous creditors led to the confirmation of Debtors' Chapter 11 reorganization plans on April 12, 1991. The plans provided for the transfer of the campgrounds to a new entity, Buckeye Resorts, Inc. Although the entire transaction involved an asset value of $4,500,000.00, the actual cash disbursed by the Trustee in connection with the sale amounted to $300,000.00. The properties were transferred subject to liens of various creditors who received new promissory notes executed by Buckeye Resorts, Inc. and Guardian Credit Corporation.

The Trustee has requested payment of the following fees and expenses:

| The Landing, Inc. | Fees | Expenses |
| --- | --- | --- |
| May 1, 1991–August 31, 1991 | $ 4,948.59 | $363.90 |
| September 1, 1991–January 31, 1992 | 701.36 | 37.50 |
| Final Allowance from Sale | $45,000.00 | |
| Ponderosa Park Resort, Inc. | | |
| May 1, 1991–August 31, 1991 | $ 9,383.99 | $363.90 |
| September 1, 1991–January 31, 1992 | 625.23 | 37.50 |
| Final Allowance from Sale | $90,000.00 | |

Previous interim fees and expenses awarded to the Trustee by this court total $36,806.74 in the Landing and $50,332.24 in Ponderosa, for a total of $87,138.98.

## DISCUSSION

Geico objected to the Trustee's applications on several grounds, including inaccurate calculation of his commission, inaccurate timekeeping, improper billing for services of support personnel, and reasonableness of the request. The Court's initial review centers on the language of 11 U.S.C. § 326(a), which sets the Trustee's commission rate.

In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed fifteen percent on the first $1,000 or less, six percent on any amount in excess of $1,000 but not in excess of $3,000, and three percent on any amount in excess of $3,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

Numerous courts have held that this language fixes the maximum compensation a trustee may receive, with the court having the power to determine the reasonableness of the fees requested up to the statutory limit. *See, e.g., Kandel v. Alexander Leasing Corp.,* 107 B.R. 548 (N.D.Ohio 1988); *In re Roco Corp.,* 64 B.R. 499 (D.R.I.1986). The central question is what constitutes "moneys disbursed or turned over in the case by the trustee...." The Trustee urges that this wording be interpreted to include the amount or value of the liens encumbering the Landing and Ponderosa properties and which were assumed by the buyers. Three percent of this $4,500,000.00 figure would be $135,000.00, which the Trustee divides between the Debtors at $45,000.00 for the Landing and $90,000.00 for Ponderosa. Geico would include only the $300,000.00 in cash distributed under the plans, resulting in a three percent commission of $9,000.00.

The trustee focuses on whether he should be entitled to the maximum amount under the statutory limit, but provides no support for his conclusion that the entire $4,500,000.00 is the basis for such calculation. The court has found some authority for the proposition that "moneys disbursed" need not be actual cash. In *In re Greenley Energy Holdings of Pa., Inc.,* 102 B.R. 400 (E.D.Pa.1989), the district court included in the commission base $28,000,000.00 in guaranteed contracts entered into by the trustee, at a reduction to present value. The court in *In re Stanley,* 120 B.R. 409 (Bankr.E.D.Tex.1990) held that the dollar value of lien assumption by secured creditors was includable in the trustee's commission, but only because there was substantial equity in the transferred property.

Other courts have strictly construed § 326(a), holding that the commission calculation must be made only on actual money which passed through the trustee's hands to creditors. *See In re New England Fish Co.,* 34 B.R. 899 (Bankr.W.D.Wash.1983); *In re Indoor–Outdoor Dining, Inc.,* 77 B.R. 952 (Bankr.S.D.Fla.1987); *In re Barnett,* 133 B.R. 487 (Bankr.N.D.Iowa 1991). The opinion in *Kandel, supra,* affirming a decision of this court, is also supportive of the narrower view, holding that actual cash disbursed by another party to creditors under the trustee's reorganization plan could not be considered in determining commission. In view of these cases, as well as the general judicial trend towards strict construction of statutory language embodied in *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), this court concludes that only the $300,000.00 in cash actually disbursed by the trustee can be used to calculate his final commission, which at three percent produces a sum of $9,000.00.

The Trustee references a body of authority which permits the enhancement

of fees based on extraordinary effort and results achieved in the case. *See, e.g., In re Garland Corp.*, 8 B.R. 826 (Bankr.Mass. 1981) (20 percent enhancement to trustee based on proficiency and result). The majority of these cases award an enhancement to counsel involved in the case whose compensation is subject only to the reasonableness constraints of 11 U.S.C. § 330, not the strict commission cap of § 326. An example is *In re White Motor Credit Corp.*, 50 B.R. 885 (Bankr.N.D.Ohio 1985), where Bankruptcy Judge O'Neill of this District awarded bonuses to several law firms involved in an extremely large, complex and ultimately successful reorganization. The problem facing this court is that even in a case such as *Garland, supra*, which permitted an enhancement, the final compensation award fell far short of the commission limit. The court in *Wall v. Wilson (In re Missionary Baptist Foundation of America)*, 77 B.R. 552, 555 (Bankr. N.D.Tex.1987), while holding that any compensation under the maximum would be "a gross injustice," did not award an amount greater than that permitted by § 326. The court concludes that there is no basis for enhancement of the trustee's commission above the limits embodied in § 326.

The Court recognizes the Trustee's contributions in producing a favorable result in these cases under what were at times very difficult circumstances, and echoes the comments of Bankruptcy Judge Edmonds, who was faced with an identical situation in *Barnett, supra:*

> I cannot escape the feeling that were I to rule in the trustee's favor, I would be legislating a result different from that provided for by Congress. I would probably be doing so to foster a policy of fairly compensating trustees for services provided. Congress has provided one test for compensation—reasonable compensation for actual and necessary services. 11 U.S.C. § 330(a). But regardless of how warranted compensation may be under such a test, it may not exceed the cap provided in 11 U.S.C. § 326(a). That cap is determined by considering the moneys disbursed or turned over. To transmute or perhaps to transmogrify

the congressional cap on fees to a test of benefit to the estate, is to ignore § 326(a). Unfortunately, the result may be that there are times that the trustee provides greater benefit to the estate than that for which he may be compensated. If so, it is the responsibility of Congress to correct for that circumstance.

*Id.* at 489–490.

The court will therefore authorize payment in full of the Trustee's requested fees and expenses in each case for the periods May 1, 1991 through August 31, 1991 and September 1, 1991 through January 31, 1992. All sums previously awarded, but which have not yet been paid over to the Trustee, shall be paid in full. The total final compensation for these cases, based on three percent of the disbursement of $300,000.00 cash upon transfer of the Debtors' properties, is $9,000.00.

An order in accordance herewith shall issue.