**In re LAN ASSOCIATES XI, L.P., Debtor.**

**United States Trustee, Appellant,**

v.

**James J. Cain, Appellee.**

**No. CIV. A. 98–2286(JEI).**
**Bankruptcy No. 92–13413(JHW).**

United States District Court,
D. New Jersey.

Aug. 12, 1998.

---

50

Patricia A. Staiano, United States Trustee, Region 3, Steven E. Mackey, Assistant United States Trustee by Robert J. Schneider, Senior Attorney, Newark, NJ, , for appellant.

Weinberg, Mccormick, Chatzinoff & Paul, P.A. by Joseph A. McCormick, Jr., Esq., Anne S. Cantwell, Esq., Haddonfield, NJ, for appellee.

The National Association Of Bankruptcy Trustees by Joseph I. Wittman, Esq., Topeka, KS, Amicus curiae.

1. The factual background for the most part is taken from the bankruptcy court's March 16,

## OPINION

IRENAS, District Judge.

Presently before this Court is the United States Trustee's appeal from an order of the bankruptcy court awarding compensation to the trustee. This Court has jurisdiction pursuant to 28 U.S.C.A. § 158(a)(1).

Title 11, § 326(a), of the United States Code, sets a cap on allowable bankruptcy trustee compensation in chapter 7 and 11 bankruptcy cases. The cap is calculated in a given case by reference to the amount of "moneys disbursed or turned over in the case by the trustee to parties in interest." Specifically, trustee compensation may not exceed certain specified percentages of the amount of moneys disbursed to parties in interest. Pursuant to Title 11, § 363(k), when a trustee sells property to a secured claimholder whose claim is secured by a lien on that property, the secured party may use his lien to pay for the property by offsetting the amount of his lien against the full purchase price of the property. The principal question in this case is whether the maximum allowable compensation for a trustee who sells property in such a "credit bid sale" may be based on the full purchase price. The bankruptcy court held that it may. This Court holds that it may not and will reverse the bankruptcy court's order and remand this case for a new determination of the trustee's compensation award.

## I. BACKGROUND [1]

On July 26, 1992, Lan Associates XI, L.P. ("the debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code. James J. Cain ("the trustee") was appointed Chapter 11 trustee on September 1, 1992. The bankruptcy court granted the trustee's motion to convert the debtor's case to a Chapter 7 bankruptcy on May 14, 1993, and reappointed Mr. Cain as the Chapter 7 trustee on June 3, 1993.

1998 opinion.

The trustee took over the operation and management of two office buildings owned by the debtor known as Marlton Executive Park, Route 73 and Executive Drive, Evesham Township, New Jersey, serving as landlord for the property for approximately eighteen months. The debtor had scheduled this property with a value of $9,000,000, encumbered by a first mortgage held by First Fidelity Bank. The property was later appraised, on September 18, 1992, with a fair market value of $9,727,000 and a liquidation value of $7,781,200. The mortgagee, First Fidelity, filed a proof of claim on November 30, 1992 in the amount of $12,865,434.55.

The trustee moved for and was granted permission to use cash collateral secured by First Fidelity by order dated December 4, 1992; the cash collateral authorization was extended by order dated March 24, 1993. On February 23, 1993, the trustee filed his first application for compensation for Chapter 11 services in the amount of $28,665.51 in fees and $437.96 in costs, most of which related to the trustee's services as landlord for Marlton Executive Park. The trustee's request was granted by order dated April 8, 1993.

In October of 1993, the trustee—now the Chapter 7 trustee—moved under 11 U.S.C. § 506(c) to compel First Fidelity to pay attorneys fees and costs, accountants fees and costs, and the trustee's fees and costs from the cash collateral held by the trustee. First Fidelity voiced no objection, except to clarify that the § 506(c) relief sought was limited to the Second Interim Allowance application of trustee's counsel, which would be paid from funds held by the trustee. By order entered December 17, 1993, the trustee was authorized to pay professional compensation previously allowed, from funds on hand. The order was corrected to limit . § 506(c) payment authorization to trustee's counsel by order entered January 31, 1994.

By motion made returnable on February 14, 1994, the trustee sought authorization to sell the real property of the estate. The trustee recognized that the property was substantially overencumbered but noted that he had "received a proposal to purchase the real estate from the secured creditor. First Fidelity would credit bid the liquidation value and would actually pay the sum of $372,387.00. This payment would be made by allowing the Trustee to retain this amount from the cash collateral on hand."

The trustee supported First Fidelity's proposal on three grounds. First, he characterized the proposal as an opportunity for other bidders to submit higher and better offers. Second, he believed that disposing of the property in a commercially reasonable manner was a predicate to the ability of the trustee to pursue the general partner of the debtor on a deficiency claim under 11 U.S.C. § 723. He sought to avoid the delay that would ensue during a foreclosure to determine the amount of the deficiency that would be borne by the estate, which in turn would delay the commencement of a § 723 action. Third, the lender agreed to waive its deficiency claim against the estate, and to allow the trustee to retain the sum of $372,387.00 to contribute toward the expenses of sale and to provide a distribution to general unsecured creditors.

In his certification, the trustee provided a break-out of anticipated administrative claims, totaling $393,232.61. Trustee "commissions" from the sale of the property, calculated on the credit bid of $7,781,-200, amounted to $233,616. In addition, trustee compensation of $70,000 was anticipated on the basis of rental payments received. The trustee proposed that his "commissions" be reduced in order to afford unsecured creditors a payment of approximately $62,500, which he calculated would provide a dividend of approximately 25 percent to the unsecured creditors.

The Notice of Private Sale sent to creditors reflected the trustee's proposal—subject to higher and better offers—to "sell" the property to First Fidelity "for a bid of

$7,781,200.00," and advised, *inter alia,* that First Fidelity would permit the trustee to retain $372,387 from cash collateral. The 25 percent distribution mentioned in the Notice was based on the trustee's estimate of unsecured claims in the amount of $250,000. The sale was approved by court order dated February 14, 1994. The order authorized the trustee to contribute $83,-346.00 from his commissions to facilitate a meaningful distribution to unsecured creditors.

The credit bid sale took place on April 18, 1994, and the purchaser was the assignee subsidiary of First Fidelity, Marlton Fidoreo—L.S., Inc. The trustee forwarded a Report of Private Sale to the United States Trustee.

The trustee applied for approval of his compensation on October 17, 1994, seeking compensation based on the credit bid sale and the operating expenses throughout the trustee's tenure. The trustee requested fees in the amount of $204,522.76, and expenses in the amount of $999.40. There were no objections by the unsecured creditors or by the United States Trustee. At the fee hearing held on December 1, 1994, the bankruptcy court questioned the amount of the trustee's compensation, as it translated into an hourly rate of $403.09 per hour, and questioned the amount of the distribution intended for unsecured creditors. The issue of the permissibility of the trustee's use of a credit bid in the calculation of his § 326(a) fee cap was not raised. By letter dated December 2, 1994, the trustee's counsel addressed the open issues, reflecting that the trustee's compensation is earned not only by the hours of service, but also by the extent of potential liability undertaken. Counsel reaffirmed the prospect that the trustee's efforts would result in a 25% distribution to unsecured creditors. The trustee's fee application was approved by order entered December 2, 1994, and the trustee was paid his requested commission on December 6, 1994.

On notice to creditors and the United States Trustee, the trustee sought authorization from the court by motion returnable April 17, 1995, to make an interim distribution to the unsecured creditors representing a 19 percent dividend. The disbursement was approved without objection, and was made on May 15, 1995. Thereafter, the trustee determined to abandon any cause of action against the debtor's general partner, and filed his Final Report with the Office of the United States Trustee.

The United States Trustee objected to the Final Report on the ground that the trustee's interim compensation grossly exceeded the maximum allowable commission under 11 U.S.C. § 326(a) which limits a trustee's commissions to a percentage of "all moneys disbursed or turned over in the case by the trustee." The United States Trustee argued that the trustee's improper utilization of First Fidelity's credit bid resulted in an over payment of $142,449.40. The trustee responded by arguing that the credit bid calculation was proper, and that the United States Trustee could not challenge the allowance after having received with silence several notices about the credit bid and interim fee, and after the trustee actually had received the interim allowance.

In an opinion dated March 16, 1998, the bankruptcy court first determined that the trustee's utilization of the credit bid to determine his compensation was proper. The bankruptcy court then conducted an assessment of the reasonableness of the trustee's fee request. The court stated that its reasonableness assessment was "influenced" by the procedural history of the case, including four notices to the United States Trustee concerning the contemplated compensation, the objection by the United States Trustee nearly two years after the award had been entered and paid, and the potential for hardship to the trustee that substantial disgorgement would entail.

The bankruptcy court found that the trustee's requested compensation was rea-

sonable with one qualification: the trustee had predicted a 25 percent dividend to the unsecured creditors, but in fact had disbursed only a 19 percent dividend. This 6 percent shortfall traced to the trustee's use of an amount of allowable unsecured claims in making its calculations that proved to be less than the actual amount of allowable unsecured claims. Because by December, 1994, when the trustee represented that there would be a 25 percent dividend, the trustee should have known that the actual amount of allowable unsecured claims was greater than it had projected initially, the bankruptcy court ordered the trustee to honor his projection of a 25 percent dividend. Accordingly, the court ordered the trustee to disgorge $19,-634.11.

The final approved compensation award for the trustee was $184,888.25. This award apparently was in addition to the $28,665.51 the trustee earlier received for running Marlton Executive Park. The bankruptcy court entered an appropriate order on April 6, 1998. Now before this Court is the United States Trustee's appeal from that order. In addition to the briefs filed by the appellant and the appellee in this matter, the National Association of Bankruptcy Trustees ("NABT") has filed an amicus curiae brief urging this Court to affirm the bankruptcy court's order.

## II. STANDARD OF REVIEW

■■■ Compensation orders present matters committed to the bankruptcy court's discretion. Decisions committed to the discretion of the bankruptcy court are reviewed for abuse of discretion. *In re Martin*, 91 F.3d 389, 393 (3d Cir.1996); *In re BH & P, Inc.*, 949 F.2d 1300, 1313 (3d Cir.1991); *In re Halvajian*, 216 B.R. 502, 508 (D.N.J.1998). "An abuse of discretion involves 'a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact.'" *Valenti v. Mitchell*, 962 F.2d 288, 299 (3d Cir.1992) (quoting *International Union*, *UAW v. Mack Trucks, Inc.*, 820 F.2d 91, 95 (3d Cir.1987)); *see In re Integrated Resources, Inc.*, 157 B.R. 66, 72 (S.D.N.Y. 1993); *In re AM Int'l, Inc.*, 67 B.R. 79, 81 (N.D.Ill.1986). Questions of law are reviewed *de novo. General Motors Acceptance Corp. v. Jones*, 999 F.2d 63, 66 (3d Cir.1993) (citation omitted). Bankruptcy Court findings of fact will be set aside only if clearly erroneous. *In re Stendardo*, 991 F.2d 1089, 1094 (3d Cir.1993); Fed. R. Bankr.8013.

## III. DISCUSSION

The United States Trustee ("UST") raises three questions on appeal:

1. Whether the court below erred as a matter of law in deviating from the plain meaning of 11 U.S.C. § 326(a), pursuant to which maximum allowable trustee compensation is determined, and allowing the Trustee to base his compensation calculation upon the credit bid portion of a 11 U.S.C. § 363(k) sale.

2. Whether the court below erred as a matter of law in holding that trustee compensation is not limited to a reasonableness determination as required by 11 U.S.C. § 330(a).

3. Whether the court below erred in finding that the compensation received by the Trustee was reasonable in light of the Trustee's efforts.

### A. *Credit Bid Compensation*

■■■ The UST contends that the bankruptcy court erred as a matter of law in using the $7,781,200 credit bid sale to calculate the maximum amount of allowable trustee compensation.

At the time this case commenced, 11 U.S.C. § 330 authorized the bankruptcy court to award, subject to 11 U.S.C. § 326(a), reasonable trustee compensation for services "based on the nature, the extent, and the value of such services, the time spent on such services, and the costs of comparable services other than in a case

under this statute."[2] Section 326(a) at the time provided:

> In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, *upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.*

(emphasis added).[3]

The sale of real property in this case was pursuant to 11 U.S.C. § 363(b)(1) and (k). Subsection (b)(1) authorizes the trustee to sell property of the estate. Subsection (k) provides that at a subsection (b)(1) sale "of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property." Such a sale has been called a "credit bid sale."

The bankruptcy court held that, under the circumstances of this case, the value of the credit bid sale could be used in determining the maximum amount of trustee compensation allowed by § 326(a). The court based its decision on two factors: the secured creditor consented to the arrangement and the unsecured creditors received some benefit from the transfer. The UST argues that the court's decision was incor-

rect as a matter of law. She urges that a plain meaning statutory analysis compels the conclusion that the value of a credit bid sale cannot be used to calculate the cap of trustee compensation. This Court agrees.

■ "It is axiomatic that statutory interpretation properly begins with the language of the statute itself, including all of its parts." *Velis v. Kardanis,* 949 F.2d 78, 81 (3d Cir.1991). "[W]here ... the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)). "There is no need to resort to legislative history unless the statutory language is ambiguous." *Velis,* 949 F.2d at 81. "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.'" *Id.* at 242, 109 S.Ct. 1026.

■ Section 326(a) caps trustee compensation at certain specified percentages of "all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims." Because the statute does not define the terms, they "will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979) (citation omitted). "Moneys" is defined as "sums of money." *Webster's Third New Int'l Dictionary* 1458 (1986). "Money" means "something generally accepted as a medium of exchange, a measure of value, or a means of payment." *Id.*[4] "Disburse"

---

**2.** Effective October 22, 1994, § 330 was amended to provide more specific criteria for use in determining a reasonable amount of compensation.

**3.** Section 326(a) was amended effective October 22, 1994 to increase compensation rates,

but this amendment applies only to cases commenced after October 22, 1994. *See* Pub.L. 103–394, § 702 (1994).

**4.** In legal usage the term "money" "does not embrace notes, bonds, evidences of debt, or

means "to expend esp[ecially] from a public fund: pay out," "to pay in settlement," or "distribute." *Webster's Third New Int'l Dictionary* at 644. The relevant meaning of "turn over" is "to hand over: DELIVER, TRANSFER." *Id.* at 2469.

■ There is no ambiguity in § 326(a). Neither property nor value is "moneys" within the meaning of the statute. *See In re Brigantine Beach Hotel Corp.*, 197 F.2d 296, 299 (3d Cir.) (citing *American Surety Co. v. Freed*, 224 F. 333 (3d Cir.1915)), *cert. denied*, 344 U.S. 832, 73 S.Ct. 39, 97 L.Ed. 647 (1952). *But see In re Toole*, 294 F. 975, 976 (S.D.N.Y.1920). "Money" is used elsewhere in the Bankruptcy Code to refer to cash or cash equivalents. *See* 11 U.S.C. § 345 (addressing trustee's ability to invest money); *see also Velis*, 949 F.2d at 81 (perceived ambiguities clarified by considering how word or phrase is used elsewhere in same statute). Indeed, a fundamental duty of the trustee is to reduce "property" to "money." 11 U.S.C. § 704(1).

Congress could have said that trustee compensation must be capped by set percentages of the "value of assets administered" or on the "value of consideration" disbursed, but it did not. *See In re Barnett*, 133 B.R. 487, 489 (Bankr.N.D.Iowa 1991); *In re New England Fish Co.*, 34 B.R. 899, 901 (Bankr.W.D.Wash.1983). When Congress intends for the trustee's maximum compensation calculation to be based on the value of consideration other than "moneys" it knows how to express that intent. In 1938, Congress amended the Bankruptcy Act of 1898 to provide for compensation for trustees, marshals and receivers in bankruptcy proceedings superseded by reorganization proceedings. The Act provided that "[s]uch compensation shall be computed upon all moneys disbursed or turned over ... and where

under the plan of reorganization any part of the consideration to be paid to unsecured creditors is other than money, *upon the amount of the fair value of such consideration.*" 52 Stat. 861, ch. 575, § 1; *see* 11 U.S.C. § 76(g) (1976) (emphasis added).[5]

■ "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (citations omitted). Following this principle, this Court finds that under a literal application of § 326(a) the value of the credit bid portion of a § 363(b) sale is not "moneys disbursed or turned over ... to a party in interest," and cannot be used to calculate the maximum allowable amount of trustee compensation.

The trustee and NABT point to a number of cases in which courts have avoided applying the literal terms of § 326(a) by employing a "constructive disbursement" theory. Under this theory, when a trustee sells property subject to liens or mortgages or sells property in a credit bid sale, the value of the lien or the property (or the value of the claim being discharged by the transfer) is considered to have been constructively disbursed by the trustee to the party in interest. *See In re Barnett*, 133 B.R. 487, 488 (Bankr.N.D.Iowa 1991). "The basis for the theory is to insure to trustees compensation commensurate with their services, particularly when the estate's administration is complex and the estate benefits from the services." *New England Fish Co.*, 34 B.R. at 900 (citing 2 *Collier on Bankruptcy* § 326.01 (15th ed.)); *see Southwestern Media, Inc. v. Rau*, 708 F.2d 419, 423 (9th Cir.1983) (dicta). As one court has noted, adopting the constructive disbursement theory is tantamount to holding that the statutory lan-

other personal or real estate." *Black's Law Dictionary* 1005 (6th ed.1990).

**5.** This provision since has been removed. The section of the United States Code in

which it was codified, 11 U.S.C. § 76(g), was supplanted by § 326 of the current Code. *See* Bankruptcy reform Act of 1978, P.L. 95–598, 92 Stat. 2549 (1978).

guage is sufficient to include property as value received as "moneys disbursed." *See New England Fish*, 34 B.R. at 900.

The Third Circuit has neither endorsed nor adopted the constructive disbursement theory. In *American Surety Co. v. Freed*, 224 F. 333 (3d Cir.1915), the Third Circuit discussed the theory but stated that "[t]he case under review does not require us to approve or follow that law." *Id.* at 337. In *In re Prindible*, 115 F.2d 21 (3d Cir. 1940), the Third Circuit implicitly criticized the theory when it indicated that a trustee may base her maximum compensation only on the equity portion of a sale of encumbered property.[6]

This Court predicts that the Third Circuit would not endorse the constructive disbursement theory, at least not in the context of a credit bid sale.[7] The courts adopting the theory have not opined that § 326(a) is ambiguous or that by "moneys" Congress intended to include "property" or "value." Rather, these courts have used the theory to avoid applying the statute's literal terms where to do so would result in perceived underpayment of trustees for their services. *See, e.g., In re Stanley*, 120 B.R. 409, 413 (Bankr. E.D.Tex.1990); *In re Greenley Energy Holdings of Pa.*, 102 B.R. 400, 404

(E.D.Pa.1989); *In re Sanford Furniture Mfg. Co.*, 126 F. 888 (E.D.N.C.1903). These courts have employed an improper method of statutory interpretation and have produced results at odds with Congress's expressed intent. *See, e.g., New England Fish*, 34 B.R. at 901–02. Whatever compensation might be deemed to be reasonable under § 330, Congress has opted to make the award of reasonable compensation "subject to" to the caps in § 326(a) which in turn must be based only on "moneys disbursed or turned over." To the extent that this rule sometimes might produce results perceived to be unreasonable, the solution lies with Congress and not with the courts. *See Barnett*, 133 B.R. at 490; *In re Music Merchandisers, Inc.*, 131 B.R. 377, 380 (Bankr.M.D.Tenn.1991); *New England Fish*, 34 B.R. at 902; *see also In re Colonial Southbury Ltd. Partnership*, No. 94–B–22057 (JJC), at 8 (Bankr.S.D.N.Y. June 3, 1997) (unpublished opinion) ("Presented with Congress' clear intent to exclude any transfer of assets prior to liquidation by a trustee from Section 326(a) consideration, the allowance of compensation for [a credit bid sale] would equate to judicial legislation.").

In sum, this Court adheres to its conclusion that the plain meaning of § 326(a) is

---

6. *Prindible* involved property which had been sold "to the mortgagees thereof for the discharge of the mortgage debt" with the mortgagees contributing $1,800.00 toward administration expenses, this $1,800.00 being the only part of the consideration for the sale which "ever came into the trustee's hands." *Id.* at 23. In discussing trustee compensation, the court said that "[b]efore trustees . . . are entitled to compensation upon moneys disbursed or turned over by them to lienholders . . . it is necessary that the trustee show some act of administration with respect to encumbered property, such as preserving an equity of the bankrupt in the property. . . . And, even then, compensation has been held to be due only upon the value of the equity of redemption." *Id.* at 24 (citing *In re Old Oregon Manuf. Co.*, 236 F. 804 (W.D.Wash. 1916)).

7. There might be cases in which it is defensible to treat consideration other than "mon-

eys" as property. But these cases should be limited to those "rare cases" in which the literal application of statutory language would achieve a result "demonstrably at odds" with Congress's intentions. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

*In re Greenley Energy Holdings of Pennsylvania*, 102 B.R. 400 (E.D.Pa.1989), might be defended as a case in which a literal application of § 326(a)'s terms would have been utterly at odds with Congress's intent to ensure that trustees receive some compensation for disbursing money to unsecured creditors. In *Greenley*, a Chapter 11 case, the trustee by all accounts had performed a "miracle" in entering the estate into guaranteed contracts which would result in unsecured creditors eventually receiving one-hundred percent of their claims. The court there agreed with the trustee that the value of guaranteed contracts which he had secured could be considered money turned over pursuant to § 326(a).

dispositive of the issue *sub judice* and holds that the statute forbids the bankruptcy court from using the value of property transferred in a credit bid sale in calculating the maximum allowable amount of trustee compensation. In so holding, this Court joins two courts which recently have disallowed trustee compensation based upon credit bid sales. *See In re Pink Cadillac Assocs.*, 96 Civ. 4571(LLS), 1997 WL 164282 (S.D.N.Y. Apr. 8, 1997) (unpublished opinion); *In re Colonial Southbury Limited Partnership*, No. 94–B–22057 (JJC) (Bankr.S.D.N.Y. June 3, 1997) (unpublished opinion). Moreover, this Court joins a number of courts which have relied expressly on § 326(a)'s plain meaning to disallow trustee compensation based upon the value of consideration other than "moneys disbursed" by the trustee. *See, e.g., Kandel v. Alexander Leasing Corp.*, 107 B.R. 548 (N.D.Ohio 1988) (monies which passed through state receiver directly to debtor-in-possession for distribution to parties in interest); *Barnett*, 133 B.R. 487 (transfer of debtor's encumbered properties); *Music Merchandisers*, 131 B.R. 377 (cause of action against creditor traded for partial discharge of priority claim); *In re North American Oil & Gas, Inc.*, 130 B.R. 473 (Bankr.W.D.Tex.1990) (unliquidated assets turned over to liquidating agent); *In re Indoor–Outdoor Dining, Inc.*, 77 B.R. 952 (Bankr.S.D.Fla.1987) (disbursements made by title company); *New England Fish*, 34 B.R. 899 (cancellation and release of claims, stock credit sale, and assumption of lien claims and unsecured claims); *see also In re Pink Cadillac Assocs.*, 96 Civ. 4571(LLS), at 6, 1997 WL 164282 (S.D.N.Y. Apr. 7, 1997) (unpublished opinion) ("Numerous cases since the 1978 Act have interpreted 'moneys' literally, and have required money, not value or property, to be disbursed by the trustee.") (citations omitted); *In re Rhea*, 143 B.R. 690, 691 (S.D.Tex.1992) (finding "no Fifth Circuit authority for departing from the unambiguous language of the statute" and rejecting claim that fee award should be based on total extent of services rendered rather than only on actual moneys disbursed); *In re The Landing, Inc.*, 142 B.R. 169, 171 (Bkrtcy. N.D.Ohio 1992) (refusing to treat transfer of debtor's properties subject to liens as disbursement of moneys to lienholding creditors in part because of "the general judicial trend towards strict construction of statutory language").

Having held that the plain language of the statute controls, this Court notes that the legislative history too shows that Congress did not intend for the value of a credit bid sale to be used in calculating a trustee's compensation cap. The House of Representatives' report on section 326(a) states: "The amounts are *the amounts of money distributed* by the trustee to parties in interest, excluding the debtor, but including secured creditors." H.R.Rep. No. 95–595, at 327 (1977), *reprinted in* 1978 U.S.C.A.A.N. 5963, 6283 (emphasis added). The report also states:

> It should be noted that the bases on which the maximum fee is computed includes moneys turned over to secured creditors, to cover the situation where the trustee liquidates property subject to a lien and distributes the proceeds. *It does not cover cases in which the trustee simply turns over the property to the secured creditor,* nor where the trustee abandons the property and the secured creditor is permitted to foreclose.

*Id., reprinted in* 1978 U.S.C.A.A.N. at 6283–84 (emphasis added).

This history shows that Congress's choice of the term "moneys" was deliberate. Moreover, by stating that Congress did not intend for the turning over of property to the secured creditor to be considered in calculating the trustee's maximum compensation, this history bolsters the conclusion reached by reading the plain language of § 326(a)—that is, that by "moneys" Congress meant only cash or its commonly accepted substitutes. *See In re Indoor–Outdoor Dining, Inc.*, 77

B.R. 952 (Bankr.S.D.Fla.1987) ("The statutory history suggests a deliberate rejection of some decisions under the former statutes which would equate the debtor's property with "moneys" administered by the trustee.").

 The legislative history explicitly differentiates the situation in which the trustee turns over property to the secured creditor from the one in which the trustee liquidates the property and disburses the proceeds to the secured creditor. The substance of Congress's intent as manifested in this history—if not in the text of § 326(a) itself—is that the amount of a trustee's compensation is capped by reference to her success in liquidating the estate's assets and distributing the proceeds to parties in interest. A trustee does not liquidate assets or distribute proceeds when she turns property over to a secured creditor, she merely transfers title in the property to the party which in substance already owns it. *See American Surety Co. v. Freed*, 224 F. 333 (3d Cir.1915). The secured creditor might derive benefits from having the property turned over in this fashion, but such benefits are not "moneys disbursed." *See In re Barnett*, 133 B.R. 487, 490 (Bankr.N.D.Iowa 1991).

 The trustee and NABT suggest that this case is not one in which the trustee "simply turns over property" to a secured creditor because the transfer of Marlton Executive Park was part of an agreement under which the trustee was able to secure a fund of money (the $372,-387 cash collateral) for disbursement to parties in interest,[8] and under which First Fidelity waived its remaining unsecured claim. The word "simply" cannot bear the

weight that this argument places upon it. The point made by the legislative history is that the turning over of property to a secured creditor is not a disbursement of money within the meaning of the statute. That the credit bid sale was a means used to secure a fund of money for disbursement to parties in interest and a waiver of an unsecured claim does not transform that sale into a disbursement of money.

The argument that this case is not one in which the trustee "simply turns over property" to a secured creditor because the trustee managed the property for eighteen months fails for the same reason. That the trustee acted as landlord, collected rents and made disbursements prior to the credit bid sale does not convert the credit bid sale into a disbursement of money to a party in interest. While a trustee might be entitled to compensation for acting as landlord for a property,[9] that is not a basis for using the value of that property to determine the cap on trustee compensation.

In conclusion, this Court holds that it was legal error for the bankruptcy court to consider the value of the credit bid sale as part of the base used to calculate the maximum allowable amount trustee compensation. This Court will reverse the bankruptcy court's order and remand this case.

### B. *The Reasonableness Determination*

The UST challenges as a matter of law the bankruptcy court's consideration of three factors in performing its reasonableness analysis of the trustee's requested compensation. Specifically, the UST claims that the bankruptcy court erred (1)

8. There appears to be no dispute that this $372,387 may be used in calculating the § 326(a) cap.

9. *See* 11 U.S.C. § 506(c). It appears that the trustee in this case was permitted to use cash collateral secured by First Fidelity to pay fees and costs associated with Marlton Executive Park in April, 1993. *See* Bankruptcy Court Opinion at 3. There also was an order entered

December 17, 1993 and amended by order entered January 31, 1994, authorizing the trustee to use cash collateral to pay trustee's counsel pursuant to § 503(c). *See id.* at 3–4. Also, in proposing the credit bid sale, the trustee noted anticipated administrative claims including a $70,000 trustee "commission" on the basis of rental payments received. *Id.* at 5.

by incorporating the 11 U.S.C. § 326(a) maximum as a factor in the analysis; (2) by taking into consideration that the UST had not objected to the trustee's proposed compensation until the Final Report stage; and (3) by taking into consideration the hardship that a disgorgement order might work on the trustee. The discussion now turns to consider these claims.

### 1. Use of § 326(a) Maximum as Factor in Reasonableness Analysis

■ The UST claims that it is legal error to import § 326(a)'s maximum compensation levels into the reasonableness analysis. This Court agrees and holds that it is erroneous as a matter of law to factor in § 326(a)'s cap on trustee compensation in determining what is a reasonable compensation award for the trustee's services.

The criteria for determining the amount of compensation which is reasonable for the trustee's services in this case are "the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services [in nonbankruptcy cases]." 11 U.S.C. § 330(a) (1988). The percentages of moneys disbursed set forth in § 326(a) constitute caps on the amount of compensation the bankruptcy court may allow under § 330. See 11 U.S.C. § 330 (stating that "subject to section[ ] 326" the court may award reasonable compensation). Thus, the intent is that the § 330 reasonableness determination be conducted first, independent of the § 326(a) caps. See, e.g., In re Draina, 191 B.R. 646, 648 (Bankr.D.Md. 1995); In re C & A Enters., Inc., 132 B.R. 303, 310 (Bankr.W.D.Pa.1991). The UST correctly states that "the House Report answers any lingering questions about the intent behind 11 U.S.C. § 326(a)" in this regard where it explains:

It must be emphasized that this section does not authorize compensation of trustees. This section merely fixes the maximum compensation of a trustee. Proposed 11 U.S.C. § 330 authorizes and fixes the standard of compensation. Under section 48(c) of current law, the maximum limits have tended to become minimums in many cases. This section is not intended to be so interpreted. The limits in this section, together with limitations found in section 330, are to be applied as outer limits, and not as grants or entitlements to the maximum fees specified.

H.R.Rep. No. 95–595, at 327 (1977), reprinted in 1978 U.S.C.A.A.N. 5787, 5823.

It is not clear from the bankruptcy court's opinion to what extent that court actually relied on § 326(a)'s caps in deciding that the trustee's requested compensation award was reasonable. The court did state expressly that the compensation requested by the trustee actually was less than the maximum allowed under § 326(a), and also noted that trustee awards in cases similar to the one at bar customarily are close to or at the maximum permissible level. It suffices to say that on remand the bankruptcy court will be required to perform the reasonableness analysis based solely on the criteria set forth in § 330.[10]

### 2. Use of Procedural History and Hardship to Trustee as Factors in Reasonableness Analysis

■ At the conclusion of its reasonableness analysis, the bankruptcy court stated:

Although we may have reached the same result without considering the special circumstances in this case, we readily acknowledge that we are influenced in reaching our decision by the procedural history of this case, including four notices to the UST of the contemplated

---

**10.** Of course this analysis may draw on principles in case law interpreting § 330 to the extent they are consistent with this Court's holding concerning the irrelevance of § 326(a) to the basic reasonableness analysis.

compensation, the timing of the first objection by the UST, nearly two years after the award was entered and paid, and the potential for hardship in the event that substantial disgorgement is required.

March 16, 1998 Opinion at 34. The UST argues that the bankruptcy court abused its discretion by improperly considering the procedural history and possible hardship to the trustee in determining that the requested fee award was reasonable.

This Court holds that these factors are not proper considerations in the determination concerning what amount of compensation is reasonable for the trustee's services. However, it is impossible to discern whether the bankruptcy court materially relied on these factors. The court said it might have reached the same result in the absence of these factors, but also said it had been influenced by them. Again, it suffices to say that on remand, the bankruptcy court will be required to undertake the reasonableness analysis based solely on the criteria set forth in § 330.

## IV. CONCLUSION

For the foregoing reasons, this Court will reverse the bankruptcy court's April 6, 1998 order and remand this case for a determination of trustee compensation based on 11 U.S.C. § 330 and subject to 11 U.S.C. § 326(a) as interpreted by this Court.